# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 19-CR-322 |
| v. | Hon. Robert M. Dow, Jr.<br>United States District Court Judge |
| EDWARD M. BURKE,<br>PETER J. ANDREWS, and<br>CHARLES CUI | |

## DEFENDANT CHARLES CUI'S
## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SEVERANCE

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

RELEVANT BACKGROUND ............................................................................................. 2

    1.    Count One against Mr. Burke for RICO violation (the "RICO Count") ............................................................................................... 2

    2.    Counts Two, Three, and Four against Mr. Burke related to the Post Office Project (the "Post Office Counts") ........................................ 4

    3.    Counts Five, Six, Seven, Eight, Nine, and Ten against Mr. Burke and Mr. Andrews related to the fast food restaurant (the "Fast Food Restaurant Counts") ............................................................ 4

    4.    Counts Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen and Seventeen against Mr. Burke and Mr. Cui related to Company C (the "Company C Counts") ................................................................... 5

    5.    Counts Eighteen and Nineteen against Mr. Burke related to Museum 1 (the "Museum Counts") ............................................................ 6

    6.    Discovery Produced by the Government ................................................ 6

ARGUMENT ......................................................................................................................... 7

    A.    Because the Indictment Fails to Allege a Common Plan or Scheme, Severance Is Required Under Rule 8(b) .................................. 7

    B.    Even If Joinder Was Proper Under Rule 8(b), Because a Joint Trial Would Prejudice Mr. Cui, Severance Is Appropriate Under Rule 14(a) .............................................................................................. 11

CONCLUSION .................................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*United States v. Burton*, 724 F.2d 1283 (7th Cir. 1984) .................................................. 8

*United States v. Daniels*, 803 F.3d 335 (7th Cir. 2015) ........................................ 8, 9, 10

*United States v. Delatorre*, 522 F. Supp. 2d 1034 (N.D. Ill. 2007) ............................. 11

*United States v. Lanas*, 324 F.3d 894 (7th Cir. 2003) ..................................................... 8

*United States v. Lopez,* 6 F.3d 1281 (7th Cir. 1993) ...................................................... 14

*United States v. Tarango*, 396 F.3d 666 (5th Cir. 2005) ....................................... 14, 15

*United States v. Velasquez*, 772 F.2d 1348 (7th Cir. 1985) ........................................... 9

*United States v. Zafiro*, 945 F.2d 881 (7th Cir. 1991) ........................................... 12, 13

*Zafiro v. United States*, 506 U.S. 534 (1993) .................................................. 11, 12, 14

**Rules**

Fed. R. Crim. P. 14(a) ........................................................................................................ 11

Fed. R. Crim. P. 8(b) ........................................................................................................... 8

Fed. R. Evid. 401 ................................................................................................................ 13

Fed. R. Evid. 402 ................................................................................................................ 13

Defendant Charles Cui respectfully submits this memorandum of law in support of his Motion for Severance pursuant to Federal Rules of Criminal Procedure 8(b) and 14(a), and respectfully requests that the Court enter an order severing Mr. Cui's trial from that of defendants Edward M. Burke and Peter J. Andrews.

## PRELIMINARY STATEMENT

In a lengthy 59-page superseding indictment (the "Indictment"), the government brings nineteen counts based on four separate and unconnected alleged criminal acts or transactions related to: (i) the Post Office project; (ii) a fast food restaurant; (iii) Company C; and (iv) Museum 1.[1] Of these nineteen counts, only five are against Mr. Cui. And of these four separate and unconnected alleged criminal transactions, Mr. Cui's charges relate to only one: Company C. There is nothing in the Indictment connecting Mr. Cui or Company C to the Post Office project, the fast food restaurant, or the museum. Nor does the Indictment suggest in any way that Mr. Cui or any of the alleged illegal conduct related to Company C had any bearing on (or connection to) the alleged criminal acts surrounding either the Post Office project, the fast food restaurant, or the museum. Instead, those charges relate entirely to Mr. Burke and/or Mr. Andrews.

In other words, the allegations against Mr. Cui and relating to Company C make up a small and discrete component of the Indictment's otherwise sweeping allegations. Because Mr. Cui's alleged criminal behavior stands separate and apart from any allegations involving the Post Office project, the fast food restaurant, or the

---

[1] All capitalized terms not defined herein have the meaning associated with them as described in the Indictment (ECF No. 30).

museum, the Indictment impermissibly joins Mr. Cui to the other defendants in violation of Rule 8(b). Additionally, even if joinder were proper, to allow the government to try Mr. Cui alongside Mr. Burke and/or Mr. Andrews prejudices Mr. Cui in violation of Rule 14(a). Accordingly, the charges against Mr. Cui should be severed, and Mr. Cui should be tried separate and apart from the other defendants.

## RELEVANT BACKGROUND

Company C is a limited liability company, which owned the property located at 4901 West Irving Park Road in Chicago, Illinois (the "4901 Property"). (Indictment 5.) Mr. Cui is the managing member of Company C. (*Id.*) Mr. Burke was Alderman of the Fourteenth Ward in the City of Chicago and was the proprietor of a private law firm, Klafter & Burke. (*Id.* at 3.) Mr. Andrews worked for Mr. Burke in Mr. Burke's Fourteenth Ward office. (*Id.* at 5.)

### 1. Count One against Mr. Burke for RICO violation (the "RICO Count")

Count One alleges a violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(c), and is directed solely at Mr. Burke. (Indictment 1–38.) Count One identifies the City of Chicago as the "enterprise" and lists five separate "racketeering acts" related to the Post Office project, the remodeling of the fast food restaurant, a pole sign permit for the 4901 Property, and Museum 1. (*Id.* at 29–38.)

Broadly speaking, regarding the Post Office project, the RICO Count alleges that Mr. Burke corruptly solicited legal business for his law firm in return for Mr. Burke's official assistance concerning the redevelopment of, and financing

concerning, the Post Office project. (*Id.* at 10–17, 29–32.) As to the fast food restaurant, the RICO Count alleges that Mr. Burke used his position as Alderman to corruptly solicit and extort legal business for his law firm in return for Mr. Burke's support for a building permit and related driveway permit for a fast food restaurant. (*Id.* at 18–21, 32–35.) Relating to Company C, the RICO Count alleges that Mr. Burke used his position as Alderman to corruptly obtain legal business from Mr. Cui for Mr. Burke's law firm in return for Mr. Burke's official assistance to obtain a permit for a pole sign located at the 4901 Property. (*Id.* at 22–25, 35–37.) And, finally, regarding Museum 1, the RICO Count alleges that Mr. Burke abused his position as an Alderman by threatening to take official action, in his capacity as Chairman of the Committee on Finance, to derail a proposed admission fee increase sought by Museum 1, due to the failure of Museum 1 to respond to his inquiry about an internship at Museum 1 for a child of a personal acquaintance of Mr. Burke. (*Id.* at 26–27, 37–38.)

Notably, the RICO Count alleges that Mr. Burke conspired with Mr. Andrews "to obstruct, delay, and affect commerce by extortion, that is, the extortion of fees arising from the retention of his law firm, Klafter & Burke, to be paid by Company B" with regards to the fast food restaurant. (*Id.* at 32–33.) However, nowhere in the RICO Count does the government allege that Mr. Cui conspired with Mr. Burke (or with Mr. Andrews) as it relates to either Company C or any of the other alleged racketeering acts.

### 2. Counts Two, Three, and Four against Mr. Burke related to the Post Office Project (the "Post Office Counts")

Counts Two, Three, and Four are all directed solely at Mr. Burke and all pertain to his alleged criminal behavior related to the Post Office Project. Count Two alleges a violation of 18 U.S.C. §§ 666(a)(1)(B) and 2 related to approvals of permitting and tax increment financing ("TIF") for the Post Office Project. (*Id.* at 39.) Counts Three and Four allege violations of 18 U.S.C. §§ 1952(a)(3) and 2 related to the use of a cellular telephone or email account to carry on unlawful activity also related to the Post Office Project. (*Id.* at 40–41.)

### 3. Counts Five, Six, Seven, Eight, Nine, and Ten against Mr. Burke and Mr. Andrews related to the fast food restaurant (the "Fast Food Restaurant Counts")

Counts Five, Six, Seven, Eight, Nine, and Ten are all directed at both Mr. Burke and Mr. Andrews, either collectively or separately, and all relate to alleged unlawful behavior associated with the fast food restaurant. Count Five alleges both Mr. Burke and Mr. Andrews violated 18 U.S.C. §§ 1951(a) and 2 for purportedly attempting to extort Company B. (*Id.* at 42.) Count Six alleges both defendants violated of 18 U.S.C. § 1951(a) for conspiring to extort Company B. (*Id.* at 43.) Counts Seven, Eight, and Nine allege that Mr. Burke and/or Mr. Andrews violated 18 U.S.C. § 1952(a)(3) and 2 by use of a cellular telephone or email account to carry on unlawful activity related to the fast food restaurant. (*Id.* at 44–46.) And Count Ten alleges Mr. Andrews violated 18 U.S.C. § 1001(a)(2) by making a materially false statement regarding individuals associated with the fast food restaurant. (*Id.* at 47–48.)

### 4. Counts Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen and Seventeen against Mr. Burke and Mr. Cui related to Company C (the "Company C Counts")

Counts Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen and Seventeen are directed against Mr. Burke and/or Mr. Cui and relate to alleged misconduct associated with Company C. Of these seven counts, two are pled against Mr. Burke only, four are pled against Mr. Cui only, and only one count (Count Fifteen) is pled against both Mr. Burke and Mr. Cui.

Specifically, Count Eleven alleges Mr. Burke violated 18 U.S.C. § 666(a)(1)(B) by corruptly accepting fees arising from the retention of his law firm with the intention of being influenced or rewarded for his help obtaining a permit for a pole sign concerning the 4901 Property. (*Id.* at 49.)

Count Twelve alleges that Mr. Cui violated 18 U.S.C. § 666(a)(2) by corruptly offering to pay fees arising out of the retention of Mr. Burke's law firm with the intent of influencing and rewarding Mr. Burke for Mr. Burke's help obtaining a permit for the pole sign at the 4901 Property and obtaining TIF funding for the development of the 4901 Property. (*Id.* at 50–51.) Count Twelve is the first—and only—mention of any alleged misconduct involving TIF funding and the 4901 Property.

Counts Thirteen and Fourteen allege that Mr. Cui violated 18 U.S.C. § 1952(a)(3) by use of an email account to carry on unlawful activity related to Company C. (*Id.* at 52–53.) Count Fifteen alleges that both Mr. Burke and Mr. Cui violated 18 U.S.C. §§ 1952(a)(3) and 2 by use of an email account to carry on unlawful activity associated with Company C. (*Id.* at 54.) Count Sixteen alleges that Mr. Burke again violated 18 U.S.C. §§ 1952(a)(3) and 2 by use of a cellular telephone to carry on

unlawful activity related to Company C. (*Id*. at 55.) And Count Seventeen alleges that Mr. Cui violated 18 U.S.C. § 1001(a)(2) by making a materially false statement regarding the retention of Mr. Burke's law firm and Company C. (*Id*. at 56–57.)

### 5. Counts Eighteen and Nineteen against Mr. Burke related to Museum 1 (the "Museum Counts")

Counts Eighteen and Nineteen are directed solely at Mr. Burke and are related to purported unlawful activity associated with Museum 1. Count Eighteen alleges Mr. Burke violated 18 U.S.C. § 1951(a) by attempting to extort Museum 1. (*Id*. at 58.) Count Nineteen alleges Mr. Burke violated 18 U.S.C. §§ 1952(a)(3) and 2 by use of a cellular telephone to carry on unlawful activity related to the extortion of Museum 1. (*Id*. at 59.)

### 6. Discovery Produced by the Government

The material produced since the commencement of this case is voluminous, including more than 100 discs, hundreds of thousands of pages of material, a variety of additional electronic discovery, audio recordings, and several boxes of hard copy material – the overwhelming majority of which is unrelated to Mr. Cui and Company C. Based on undersigned counsel's review of the discovery materials, counsel anticipates that the government will seek to offer extensive evidence that is wholly unrelated to Mr. Cui or Company C, including email communications, intercepted phone calls, documents from a variety of City of Chicago departments, and extensive witness testimony all related to the Post Office project, the fast food restaurant, and the museum (all of which have no relevance to the allegations against Mr. Cui).

As a result, there is a significant quantitative and qualitative difference in the evidence relating to Mr. Cui compared to both Mr. Andrews (with whom Mr. Cui is not alleged to have had any involvement with) and Mr. Burke (with whom Mr. Cui's alleged involvement pertains only to Company C). For example, the government has produced over a dozen discs of intercepted telephone conversations involving Mr. Burke. Based on undersigned counsel's review of the discovery to date, outside of Mr. Cui leaving a voicemail for Mr. Burke, Mr. Cui does not appear in these intercepts. In fact, Mr. Cui and Mr. Burke have never spoken on the telephone. Similarly, with respect to witness testimony, the government has produced reports on FBI Form FD-302 and/or grand jury testimony identifying at least 26 witnesses (excluding law enforcement or the Defendants). Even under the most generous understanding of relevancy (not to mention admissibility), only seven of these witnesses could even conceivably relate to Mr. Cui or the Company C Counts.

In short, because Mr. Cui and the Company C Counts are unrelated to the Post Office project, the fast food restaurant, or the museum, unsurprisingly only a small and discrete part of the government's discovery relates to Mr. Cui or to Company C.

## ARGUMENT

### A. Because the Indictment Fails to Allege a Common Plan or Scheme, Severance Is Required Under Rule 8(b).

Rule 8(b) permits an indictment to join two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of

acts or transactions, constituting an offense or offenses."[2] Fed. R. Crim. P. 8(b). The Rule allows for defendants to be charged in one or more counts together or separately and does not require all defendants to be charged in each count. *Id.* But, "[w]hile it is true that the defendants in a joint trial do not need to be charged in every count, or with the same crimes, where multiple defendants are charged ***all of the counts must be related to the same common plan or scheme***." *United States v. Daniels*, 803 F.3d 335, 340 (7th Cir. 2015) (emphasis added). "[W]hether there was misjoinder under Rule 8 is determined by looking solely at the allegations in the indictment." *United States v. Lanas*, 324 F.3d 894, 899 (7th Cir. 2003). If there is misjoinder, severance is required. *See United States v. Burton*, 724 F.2d 1283, 1286 (7th Cir. 1984) ("[I]improper joinder requires mandatory severance[.]").

Here, joinder is improper because the allegations against Mr. Cui are not part of a common plan or scheme with the other defendants. The Indictment alleges several separate and distinct schemes related to the Post Office project, the fast food restaurant, Company C, and the museum. The only commonality between these schemes is Mr. Burke. But the mere involvement of Mr. Burke in each of these alleged schemes is not enough.

As the Seventh Circuit noted, "acts or transactions that are pursuant to a common plan or common scheme" usually present themselves when "the acts or transactions are parts of a single conspiracy." *See United States v. Velasquez*, 772

---

[2] Rules 8(a) and 8(b) are mutually exclusive: "Rule 8(a) may be applied *only* to offenses joined against a single defendant; when more than one defendant is charged, Rule 8(b) must be applied." *United States v. Moya-Gomez*, 860 F.2d 706, 766 (7th Cir. 1988) (quoting 8 J. Moore, Moore's Federal Practice § 8.06[1] at 8-25 (2d ed. 1982) (emphasis in the original)).

F.2d 1348, 1353 (7th Cir. 1985). However, "[t]he indictment need not charge a single overarching conspiracy, provided the separate conspiracies it charges arise from a common plan or scheme and so could alternatively have been charged as a single conspiracy." *Id.* "***But the mere fact that two conspiracies have overlapping memberships will not authorize a single indictment if the conspiracies cannot be tied together into one conspiracy, one common plan or scheme***." *Id.* (emphasis added).

Here, not once does the Indictment allege (or even attempt to allege) that the purported criminal activity surrounding the Post Office project, the fast food restaurant, Company C, and the museum was undertaken pursuant to some sort of overarching conspiracy or master plan. And how could it? Each alleged scheme involved different actors, at different times, engaging in distinct behaviors that were separate and apart from each other, with each alleged scheme pursuing its own unique ends. The success or failure of any one scheme would have absolutely no bearing on the others. In other words, there is no common plan or scheme, and misjoinder has occurred.

To illustrate, the Seventh Circuit's analysis of misjoinder in *United States v. Daniels*, 803 F.3d 335 (7th Cir. 2015) is instructive. In *Daniels*, the grand jury charged three defendants in a six-count indictment related to several armed bank robberies in the Chicagoland area. *Id.* at 338. Specifically, Counts I and II charged two of the defendants (Dean and Daniels) with one bank robbery and a related firearm offense, Counts III and IV charged Daniels and another defendant (Jones),

but not Dean, with another bank robbery and gun charges related to the Bank of Lincolnwood robbery, and Counts V and VI charged Dean, but not Daniels, with robbing the First Bank in Chicago and a related firearm offense. *Id.* at 340.

On appeal, two of the defendants, Daniels and Dean, argued their offenses were improperly joined under Rule 8(b), and the Seventh Circuit agreed. *Id.* at 340–41. The government argued that "that joinder under Rule 8(b) was appropriate because Dean and Daniels were part of a crew of bank robbers and all of the charges were part of the same series of acts or transactions," but the Seventh Circuit noted that "[t]he problem for the government, though, [was] that the indictment did not allege such a theory and in assessing the propriety of joinder, we look 'solely to the allegations in the indictment.'" *Id.* at 340 (citation omitted). Instead:

> the indictment did not charge a conspiracy, or even separate conspiracies. Nor did it charge that Dean, Daniels, and others acted as a crew of bank robbers, or allege any facts indicating that they robbed the various banks as part of a common plan or scheme. Rather, the indictment alleged three separate bank robberies (and the related firearm counts) against different combinations of defendants. These allegations are insufficient to support joinder under Rule 8(b).

*Id.* (internal citation omitted). As a result, the Seventh Circuit held that "Counts III-VI of the indictment misjoined Dean and Daniels[.]" *Id.*

The same hold true here. The Indictment does not charge a single conspiracy involving Mr. Cui, Mr. Andrews, and Mr. Burke, nor does it even charge separate overlapping conspiracies. Neither does the Indictment allege that the Mr. Cui, Mr. Andrews, and Mr. Burke acted in concert or allege any facts indicating that their alleged conduct was part of some common design. Rather, as in *Daniels*, the Indictment alleges several separate and distinct acts of alleged public corruption

unrelated to each other. These allegations are insufficient to support joinder under Rule 8(b).

Accordingly, because the Indictment improperly joined the Defendants under Rule 8(b), Counts Twelve, Thirteen, Fourteen, Fifteen, and Seventeen, as they relate to Mr. Cui, should be severed.

**B.      Even If Joinder Was Proper Under Rule 8(b), Because a Joint Trial Would Prejudice Mr. Cui, Severance Is Appropriate Under Rule 14(a).**

Rule 14 provides that "[i]f the joinder of offenses or defendants in an indictment ... appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "This Rule must be read against the backdrop of Rule 2, which provides that the Federal Rules of Criminal Procedure 'are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay.'" *United States v. Delatorre*, 522 F. Supp. 2d 1034, 1046 (N.D. Ill. 2007) (citation omitted). "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." *Zafiro v. United States*, 506 U.S. 534, 541 (1993).

While "[t]here is a preference in the federal system for joint trials of defendants who are indicted together," that preference must give way when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at

-11-

537–39.  To that end, in *Zafiro*, which was on appeal from the Seventh Circuit, the Supreme Court recognized that:

> Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice.

*Id.* at 539 (internal citations omitted).  The Seventh Circuit recognized the same risk in its earlier *Zafiro* decision, noting that in "a *complex* case with *many* defendants some of whom might be only *peripherally* involved in the alleged wrongdoing," the "danger is that the bit players may not be able to differentiate themselves in the jurors' minds from the stars."  *United States v. Zafiro*, 945 F.2d 881, 885 (7th Cir. 1991), *aff'd*, 506 U.S. 534 (emphasis in the original).  This is the same risk that Mr. Cui faces if his trial is not severed, and he is instead tried alongside the other defendants in this case.

As alleged, Mr. Cui can only be characterized as a "bit player," whose charges constitute only a tiny piece of the Indictment's otherwise sweeping allegations of widespread public corruption involving the well-publicized Post Office project, a well-known national fast food restaurant, and a major Chicago museum – none of which involve Mr. Cui and all of which involve Mr. Burke, a household name in Chicago politics.

-12-

But the prejudicial danger posed to Mr. Cui in this case is even more severe than that which faces the typical "bit player" because the government does not allege that Mr. Cui, Mr. Andrews, and Mr. Burke were members of single conspiracy. As the Seventh Circuit recognized in its *Zafiro* decision, "[a] severance is more likely to be granted, **and rightly so**, when the defendants are not alleged to be members of a single conspiracy but instead are more loosely related to one another[.]" *Zafiro*, 945 F.2d at 885–86 (citation omitted) (emphasis added).

The prejudicial danger posed to Mr. Cui by a joint trial is very real. As alleged, Mr. Cui has nothing to do with the RICO Count,[3] the Post Office Counts, the Fast Food Restaurant Counts, or the Museum Counts. Any evidence about any alleged criminal wrongdoing related to these Counts would inadmissible if Mr. Cui were tried alone because such evidence is utterly irrelevant to the charges against Mr. Cui. *See* Fed. R. Evid. 401, 402.

However, at a joint trial with Mr. Andrews and Mr. Burke, the government would likely present days (if not weeks) of testimony, hours of intercepted telephone calls, and countless pages of emails and City of Chicago records related to the Post Office project, the fast food restaurant, and the museum in order to prosecute its case against Mr. Andrews and Mr. Burke. All the while, Mr. Cui would be forced to sit at the defense table as the government attempts to prove to the jury a case of widespread public corruption with which Mr. Cui has almost no alleged involvement, aside from

---

[3] While the RICO Count includes allegations related to Company C, the RICO Count does not charge Mr. Cui nor does the indictment allege that Mr. Cui conspired with Mr. Burke. (*See* Indictment 22–25.)

-13-

the Company C Counts. This is exactly the sort of impermissible prejudice the Supreme Court recognized as warranting severance. *Zafiro*, 506 U.S. at 539 ("[E]vidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty.")

Severance is the only relief that will protect Mr. Cui's right to a fair trial, as jury instructions will be insufficient to remedy the prejudice of a joint trial with Mr. Burke and Mr. Andrews. While "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice," when "the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary[.]" *Id.* at 539. Because the government would likely produce extensive evidence related to the Post Office project, the fast food restaurant, and the museum (all of which is irrelevant and inadmissible as to Mr. Cui) in a joint trial, the usual "dual presumptions that a jury will (1) capably sort through the evidence and (2) follow instructions from the court to consider each defendant separately" are overcome. *United States v. Lopez,* 6 F.3d 1281, 1286 (7th Cir. 1993).

In this regard, this case is similar *United States v. Tarango*, 396 F.3d 666 (5th Cir. 2005), where the Fifth Circuit affirmed the district court's order for a new trial on the grounds that the defendant had been prejudiced as a consequence of a joint trial. In *Tarango*, defendant Tarango, an office manager, was charged along with defendant Patel, a medical provider, for allegedly conspiring to defraud the government by engaging in a healthcare scheme. *Id.* at 668. Although tried together, Patel was tried *in abstentia* as he absconded prior to the commencement of trial, and,

similar to the headlines this case is receiving, the record reflected that Patel's absence was a major local news story. *Id.* at 670. In affirming the district court's order, the Fifth Circuit stated simply that:

> given that there were approximately 50 witnesses who testified at trial—the disproportionate number of whom testified as to a missing co-defendant, that there was scant testimony that Tarango did anything improper other than draft the relevant HCFA claim forms as she was instructed to do by Patel, because the jury was permitted to hear a significant amount of inadmissible evidence (as it pertained to Tarango), and due to the degree of notoriety attending to Patel's absence, we find that the cumulative effect of these factors when viewed in their totality, strongly weigh against overturning the district court's determination.

*Id.* at 675. In doing so, the Fifth Circuit rejected the government's argument that the district court's "cautionary instruction regarding the Government's responsibility of separately proving the allegations against Patel and Tarango" cured the prejudice. *Id.* at 673.

Although this case has not yet proceeded to trial, these same concerns are already present in this case. If jointly tried, the jury will hear substantial evidence related to the Post Office project, the fast food restaurant, and the museum as the government prosecutes its case against the other defendants, while only hearing scant evidence related to Company C and Mr. Cui's alleged wrongdoing. And the notoriety surrounding the codefendant in *Tarango* case pales in comparison to the public interest in this case and, specifically, Mr. Burke, the longest serving Alderman in Chicago history.[4]

---

[4] Additionally, other district courts have considered the burden on a defendant and his counsel to prepare for and participate in a lengthy trial when only a small portion of the evidence relates to that defendant to justify severance. *See, e.g.*, *United States v. Stoecker*, 920 F. Supp. 876, 886–87 (N.D. Ill. 1996) (finding unfair prejudice to defendant and his

Because Mr. Cui would be unduly prejudiced by a joint trial, Counts Twelve, Thirteen, Fourteen, Fifteen, and Seventeen, as they relate to Mr. Cui, should be severed, and Mr. Cui should be tried separate and apart from the other defendants.

## CONCLUSION

For the foregoing reasons, Mr. Cui respectfully requests that the Court grant his Motion for Severance and enter an order severing the charges against Mr. Cui from that of the other defendants and ordering Mr. Cui to be tried individually.

Dated:  August 19, 2020          Respectfully submitted,

By: */s/ Tinos Diamantatos*

Tinos Diamantatos
Megan R. Braden
Alex D. Berger
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL  60601-5094
Telephone: +1.312.324.1000
Facsimile: +1.312.324.1001
tinos.diamantatos@morganlewis.com
megan.braden@morganlewis.com
alex.berger@morganlewis.com

*Counsel for Defendant Charles Cui*

---

counsel to prepare and endure a three month or longer trial in which defendant was named in only 3 of 58 counts); *United States v. Farley*, No. 97 CR 441, 1998 WL 684220, at *6 (N.D. Ill. Sept. 11, 1998) (considering the inefficiency and additional expense for defendants "to sit idly" while the government presents evidence unrelated to their charges).

## **CERTIFICATE OF SERVICE**

    I, Alex D. Berger, an attorney, hereby certify that a copy of the foregoing was filed on August 19, 2020 using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                /s/ *Alex David Berger*
                                                Alex D. Berger