UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 19 CR 322 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| EDWARD M. BURKE, ) | |
| PETER J. ANDREWS, and ) | |
| CHARLES CUI ) | |

**GOVERNMENT'S MOTION TO ADMIT AUDIO AND VIDEO RECORDINGS THROUGH TESTIMONY OF LAW ENFORCEMENT**

The United States of America, by its attorney, MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, respectfully moves *in limine* to admit at trial consensually recorded in-person meetings involving Alderman Daniel Solis through FBI Special Agents.[1] As set forth below, the authenticity of these recordings is established through: (a) the recording process; (b) the voice identification of participants on the recordings; (c) the characteristics and content of the recordings; (d) other corroborating evidence in the case; and (e) the chain of custody of the recordings. For the reasons set forth below, the recordings should be admitted at trial through the testimony of an FBI agent.[2]

---

[1] Solis was identified as Alderman A in the superseding indictment.

[2] This motion only discusses authentication under Federal Rule of Evidence 901. Relevance, hearsay, and other questions concerning admissibility may be the subject of separate briefing.

## BACKGROUND

The government will seek to admit recordings of in-person meetings involving Alderman Daniel Solis, including meetings with defendant Edward Burke, which were recorded during Solis' cooperation with the government.[3] The recorded in-person meetings involving Solis occurred in 2016, 2017, and 2018. These meetings were all audio recorded, and most were also video recorded. Solis used three devices provided to him by the FBI to record these meetings, one of which recorded audio and video and the other two of which recorded audio only.

At this time, the government does not intend to call Solis as a witness at trial in its case-in-chief.[4] The government intends to introduce the Solis recordings through the testimony of a law enforcement agent who provided the recording devices and can testify to the recordings' chain of custody. The agent will be able to identify the voices of Edward Burke, Daniel Solis, and other participants. As set forth below,

---

[3] At trial, the government will also admit: (i) recordings of calls that were consensually recorded over Daniel Solis' phone during his cooperation (referred to in prior filings as "Target Phone 2"), and (ii) recordings of calls that were recorded pursuant to court-authorized wiretap orders over Edward Burke's cellphone (Target Phone 9) and Burke's City Hall office landline phones (Target Phones 10 – 15). These recordings were facilitated by the phone companies, and the equipment automatically recorded all calls, with the exception of certain phone numbers and portions that were minimized. These recordings are not the subject of the government's motion.

[4] As the government has communicated to counsel for the defendants, if the Court grants the instant motion, the government does not intend to call Mr. Solis as a witness at trial in its case-in-chief, unless defendant Burke raises an entrapment defense.

clear Seventh Circuit precedent supports the admission of these recordings in this manner.

## APPLICABLE LAW

Federal Rule of Evidence 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."

To establish the authenticity of a recorded conversation, the proponent must show, by clear and convincing evidence, that the recording is a "true, accurate and authentic recording of the conversation, at a given time, between the parties involved." *United States v. Carrasco*, 887 F.2d 794, 802 (7th Cir. 1989) (quotation marks and citation omitted). "For tape recordings, this can be done in two ways: (1) a chain of custody demonstrating the tapes are in the same condition as when they were recorded, or (2) testimony demonstrating the accuracy and trustworthiness of the tapes." *United States v. Collins*, 715 F.3d 1032, 1035 (7th Cir. 2013) (citations omitted). "A presumption of regularity attaches to evidence that has at all times been kept in official custody, and any gaps in the chain of custody go to the weight of the evidence, not its admissibility." *United States v. Smith*, 308 F.3d 726, 739 (7th Cir. 2002).

Although this foundation may come from a participant in the conversation, such a witness is not required. Numerous federal cases recognize that the foundation for recordings may be provided circumstantially through evidence that the events

3

discussed on the tapes in fact occurred and that the purported speakers on the recordings in fact participated in those events. *See, e.g., United States v. Restrepo*, 814 F.2d 1236, 1241 (7th Cir. 1987) (circumstantial evidence may be used to authenticate recordings); *United States v. Emerson*, 501 F.3d 804, 814 (7th Cir. 2007) (affirming admission of recorded conversation through law enforcement testimony where law enforcement officers testified as to the accuracy of the recording but did not listen to the recorded conversation in real-time); *United States v. O'Connell*, 841 F.2d 1408, 1420-21 (8th Cir. 1988) (evidence of recording found on recording machine seized during search warrant execution properly admitted); *United States v. Fuentes*, 563 F.2d 527, 531-32 (2d Cir. 1977) (testimony of an agent who did not observe the conversations in question was sufficient since he immediately took custody of the tapes after conversations ended).

## ARGUMENT

**I. Because the Government Can Establish the Authenticity of the Recordings, They Are Admissible Without the Testimony of a Participant.**

The government expects that law enforcement witnesses will testify that the recordings offered are true and accurate copies of Solis' meetings.

All of the recorded conversations the government seeks to admit were recorded by known processes, using appropriate, functional technology. One or more law enforcement agents will testify that, before each pre-planned meeting involving Solis, agents placed recording devices on Solis. Agents then activated the recording devices. FBI collected two of the three devices on the same day of each

4

meeting. Agents are expected to testify that, following recovery of the recording devices from Solis after each meeting, the devices appeared to not have been subjected to tampering.

FBI agents gave Solis a third audio recording device to record unplanned meetings, which Solis kept for longer periods of time to record between scheduled meetings. That recording device also did not appear to have been subjected to tampering.

FBI agents will testify that the original recordings from the in-person meetings were entered into FBI evidence and were not altered in any way. Although Solis had the ability to turn the recording devices on and off outside of law enforcement's presence, there is no evidence that he did so in the middle of any conversations with Burke. In addition, there is no evidence that any portions of conversations between Solis and defendant Burke were not recorded or were altered.[5]

An FBI agent will be able to testify about the FBI's recording software, and its labeling, copying, and downloading of the recordings. An FBI agent will testify that all of the recordings have been maintained by the FBI at all times. Thus, the government will be able to introduce evidence that it took "reasonable precautions"

---

[5] A defendant cannot defeat the admissibility of the recordings merely by suggesting tampering. *United States v. Brown,* 136 F.3d 1176, 1182 (7th Cir. 1998) ("Merely raising the possibility (however hypothetical) of tampering is not sufficient to render evidence inadmissible.").

in preserving the evidence, and a proper chain of custody will be established. *See Collins,* 715 F.3d at 1036.

The recordings themselves also include evidence showing internal consistency, and thus authenticity. Evidence may be authenticated by the "distinctive characteristics" of the evidence itself. Fed. R. Evid. 901(b)(4). According to Rule 901(b)(4), this includes "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." In this case, many of the recordings contain digital video images that clearly depict defendant Burke engaged in conversation with Solis, in addition to the agents' voice identification.[6] This provides additional strong circumstantial evidence that the original recordings (and therefore the portions of them offered at trial) are true and accurate copies of the actual conversations.

The above showing, along with suitable voice identification testimony from an agent familiar with the voices of the participants to the conversations, satisfies the requirements of Rule 90l(a). *See, e.g., United States v. Eberhart,* 467 F.3d 659,

---

[6] Voice identification testimony is not a subject of expert testimony, but rather is the subject of lay opinion testimony and can be based upon familiarity with the participants' voices. *See* Fed. R. Evid. 901(b)(5), Advisory Comm. Note to Subdivision (b). Rule 901(b)(5) requires the witness to have only "minimal familiarity" with the speakers' voices to make an identification. *United States v. Cruz-Rea,* 626 F.3d 929, 934 (7th Cir. 2010) (upholding voice identification based on a fifteen second voice exemplar compared with 24 wiretapped telephone conversations); *United States v. Recendiz,* 557 F.3d 511, 527 (7th Cir. 2009) (law enforcement officer had the "minimal familiarity" required for voice identification testimony based upon hearing defendant's voice on day of arrest); *United States v. Neighbors,* 590 F.3d 485, 493 (7th Cir. 2009); *United States v. Magana,* 118 F.3d 1173, 1208 (7th Cir. 1997) ("As long as the basic requirement of familiarity with the voice is met, lay opinion testimony is an acceptable means for establishing a speaker's identity." (quotation marks and citation omitted)); *Carrasco,* 887 F.2d at 803-04.

667 (7th Cir. 2006) (finding that "clear and convincing" standard of Rule 90l(a) met when agent listened only to informant's half of recorded conversation with defendant; "[w]hat the witness did not hear goes to the evidentiary weight of the recording, not to its admissibility"); *Collins*, 715 F.3d at 1036 (recordings made by cooperator in Mexico were admissible even though no government agents were present when recordings were made).

Under these circumstances, and consistent with settled precedent, the recordings of Solis' in-person meetings should be admitted based on agent testimony, regardless of whether Solis testifies.

II. **Admission of the Recordings Does Not Abridge Defendants' Confrontation Rights.**

When consensual recordings are admitted on the basis outlined above, defendants have sometimes claimed a violation of the Confrontation Clause of the Sixth Amendment. The Seventh Circuit, however, has squarely rejected this argument, provided that the informant's statements are not admitted for their truth, but are instead admitted solely to place the defendant's statements in context. *See United States v. Gaytan*, 649 F.3d 573, 580 (7th Cir. 2011) (confidential informant's out-of-court statements are not hearsay if they are offered not for the truth or to put words in the defendant's mouth, but to put the defendant's statements in context or to make what the defendant said and did intelligible to the jury); *United States v. Simmons*, 582 F.3d 730, 735-36 (7th Cir. 2009) (same); *United States v. Gajo,* 290 F.3d 922, 930 (7th Cir. 2002) (same); *United States v. Davis*, 890 F.2d 1373, 1379 (7th Cir. 1989) ("admission of Burnett's portion of the conversations do not implicate

7

Davis's sixth amendment rights because the tape recorded statements were admitted for the limited purpose of placing Davis's statements in context.").

Consistent with instructions previously approved by the Seventh Circuit, the government will ask this Court to instruct the jury that Solis' statements are not offered for their truth but, rather, to provide context for the statements and admissions made by defendant Burke. *See Gaytan*, 649 F.3d at 580; *United States v. Van Sach*, 458 F.3d 694, 701-02 (7th Cir. 2006) (approving use of cautionary instructions to ensure that the jury is aware of the proper weight to give the non-testifying informant's statements).

In addition, the Seventh Circuit has limited the scope of impeachment of a non-testifying informant. For example, in *United States v. McClain*, 934 F.2d 822, 832 (7th Cir. 1991), the Seventh Circuit stated that "[j]ust as [a non-testifying informant] was not a witness for sixth amendment purposes, he was likewise not a witness for Rule 607 impeachment." *Id.* The Seventh Circuit similarly rejected the argument that impeachment was permitted under Rule 806, because the statements were not admitted for their truth. *Id.* at 833.

Accordingly, as Solis' statements will not be offered for the truth of the matter asserted, their admission is neither hearsay nor a violation of defendants' Sixth Amendment rights. Accordingly, the government respectfully requests an *in limine* ruling that admission of the consensual recordings in which Solis speaks does not confer any right to cross-examine or impeach Solis under the Sixth Amendment, Rule 607, or Rule 806. Such a ruling, of course, is predicated on the jury being instructed

8

that any statements by Solis are not offered for their truth but rather are offered to provide context for defendant Burke's statements and admissions.

## CONCLUSION

Based on the foregoing, the government respectfully requests that this Court grant its motion *in limine* to introduce the recordings described herein through an agent at trial based on the proffered showing of authenticity.

    Respectfully submitted.

    MORRIS PASQUAL
    Acting United States Attorney

By:   /s/ *Sarah Streicker*
    AMARJEET BHACHU
    DIANE MacARTHUR
    SARAH STREICKER
    TIMOTHY CHAPMAN
    SUSHMA RAJU
    Assistant United States Attorneys
    219 South Dearborn Street, Fifth Floor
    Chicago, Illinois 60604
    (312) 353-5300