IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 19-CR-322 |
| v. | |
| EDWARD M. BURKE, PETER J. ANDREWS, and CHARLES CUI | Hon. Virginia Kendall<br><br>United States District Court Judge |

### DEFENDANT CHARLES CUI'S
### RENEWED MOTION FOR SEVERANCE

Defendant Charles Cui respectfully submits this Renewed Motion for Severance pursuant to Federal Rule of Criminal Procedure 14(a), and respectfully requests that the Court enter an order severing Mr. Cui's trial from that of defendants Edward M. Burke and Peter J. Andrews.[1]

### INTRODUCTION

Judge Dow expressly granted Mr. Cui permission to renew his motion for severance under Rule 14(a), after denying Mr. Cui's prior motion for severance without prejudice. Dkt. No. 196 at 165-66. Specifically, Judge Dow recognized that there was a potential for "prejudicial spillover" as "much evidence is specific only to Ald. Burke," but felt that in June 2022 it was too early "to make an educated decision

---

[1] Mr. Cui incorporates his previously filed severance pleadings herein. Dkt. Nos. 86, 87, and 154. Specifically, Mr. Cui reiterates and preserves all arguments that severance is also required under Rule 8, but focuses this renewed motion on how the Rule 14 arguments are now more developed in light of the government's filings and Judge Dow's express invitation to revisit the Rule 14 arguments at a later date.

-1-

about whether hypothetical evidence not before this Court might be relevant as statements of a party opponent and relevant as to opportunity, knowledge, etc. in forming the bribery agreements." *Id.* at 180-81. As trial now approaches, the evidence and basis for Mr. Cui to assert that there will be a prejudicial spillover effect is no longer hypothetical. The discovery received, the government's *Santiago* proffer, and the government's 404(b) motion confirm the vast majority of the evidence that the government intends to admit at more than a four-week trial will be irrelevant and inadmissible as to Mr. Cui. Therefore, Mr. Cui renews his motion for severance pursuant to Rule 14(a). Severance should be granted because there is a serious risk that the jury will be unable to make a reliable judgment about Mr. Cui's guilt or innocence and that potential for prejudice outweighs any economy in trying Mr. Cui alongside Mr. Burke and Mr. Andrews.

## ARGUMENT

The preference "for joint trials of defendants who are indicted together" must give way when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 537-39 (1993); Fed. R. Crim. P. 14(a) ("[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires").

Recent filings by the government shed further light on how the government intends to try this case, bringing more sharply into focus for the Court the need for

severance of the charges against Mr. Cui. This new, more concrete information should lead to a different conclusion about the balance of prejudice to Mr. Cui and judicial economy than when Mr. Cui first raised the severance issue, and it would be an abuse of discretion not to sever the counts against Mr. Cui.

Specifically, the government filed recently a *Santiago* proffer, which solely alleges a conspiracy between Mr. Burke and Mr. Andrews, and a Rule 404(b) notice for alleged prior acts by Mr. Burke. The content of these filings highlight the danger that the jury will wrongfully attribute to Mr. Cui alleged co-conspirator statements or prior bad acts allegedly committed by Mr. Burke, which are all inadmissible for proving Mr. Cui's guilt. Although Mr. Cui has no doubt that this Court will act diligently in issuing limiting instructions to the jury, frankly no matter how diligent this Court is with its instructions or how attentive the jury is, there is a real danger that – over the course of four weeks of evidence and testimony – the jury will be unable to reliably segregate out what evidence is and is not admissible as to Mr. Cui. And while counsel for Mr. Cui can argue to the jury about the disparity in the amount of evidence introduced at trial as to their client, some bells just cannot be unrung if the jury is left with a misimpression about Mr. Cui's alleged role in the case. As a reminder for the Court, Mr. Cui is not charged in any conspiracy count or RICO count, but these recent filings confirm there is a high probability that a jury could believe otherwise based on the evidence the government seeks to admit.

For example, the content of the *Santiago* proffer shows the prejudice Mr. Cui will face being tried along with Mr. Burke and Mr. Andrews, and the very real danger

that the jury will wrongly attribute the alleged co-conspirator actions and statements to Mr. Cui. For example, Mr. Andrew's name appears 196 times in the *Santiago* proffer (*see generally* Dkt. No. 225), and Mr. Burke's name appears 437 times (*id.*). Mr. Cui's name only appears in passing 4 times in the background section of the proffer and does not appear again in the 74-page filing, much less in the substance of the proffer. *Id.* The Government's filing makes clear that it is focused on "all such statements made by Burke and Andrews [which] furthered the conspiracy." *Id.* at 73. The *Santiago* proffer thus confirms that Mr. Cui is a bit player and that the government does not intend to make the Company C narrative that allegedly involves Mr. Cui a focus of the case.

But a bit role in regards to the evidence and focus of the case is of little comfort where the jury may become confused and improperly believe Mr. Cui is part of a larger conspiracy. Because no conspiracy is alleged against Mr. Cui in either the superseding indictment or the *Santiago* proffer, but a conspiracy is being alleged against the other two defendants, this is likely to result in juror confusion about whether Mr. Cui played a role in any alleged conspiracy or alleged RICO enterprise. Even with diligent limiting instructions, given the spotlight the government intends to place on the fast-food narrative as made clear through the proffer, the jurors could wrongly attribute alleged co-conspirator statements to Mr. Cui or become confused over four plus weeks as to whether the Company C narrative is intertwined with the fast-food narrative (it is not). And all the statements identified in the *Santiago* proffer are inadmissible for the jury to consider in determining whether Mr. Cui is

guilty. Practically, repeated limiting instructions will be necessary, which carries its own risk that jurors will become inoculated to the instructions' intended effect or actually more curious as to whether Mr. Cui was in some way involved in the alleged conduct of his co-defendants. All of which is sufficiently prejudicial to outweigh the economy of trying Mr. Cui alongside Mr. Burke.

The government's 404(b) notice presents a different danger for Mr. Cui. *See* Dkt. No. 224. The 404(b) notice shows the real potential that the jury will not be able to segregate the evidence and allegations regarding the Company C narrative in which Mr. Cui is allegedly involved from the Post Office project, the fast-food restaurant, and the museum, and more broadly from the allegations that Mr. Burke improperly used his law firm to obtain business and abuse his office to benefit his law firm clients. The 404(b) evidence the government seeks to admit involve a similar theory to the charges involving Mr. Cui, as the government alleges Mr. Cui improperly retained Mr. Burke's law firm, and the 404(b) incidents all involve allegations that Mr. Burke improperly used his law firm to solicit business and abuse his office. *See* Dkt. No. 224 at 6. Again, this creates a danger that even though the government is only seeking to admit these incidents to show Mr. Burke's guilt, the jury wrongly attributes the incidents to Mr. Cui or becomes confused and believes Mr. Cui is part of a larger conspiracy with Mr. Burke.

This potential for confusion is highly probable because at least one of the 404(b) incidents overlaps with the allegations against Mr. Cui. In relaying an alleged attempt by Mr. Burke to solicit law firm work from Company G, there is a reference

to an individual designated "Individual C-1":

> Burke responded by clarifying that he was interested in "[a]ny potential clients, not just these guys [Company A]. Who else is, uh, like, uh, is [Individual C-1] doing some stuff?" Solis confirmed he was working with Individual C-1 on developments in Solis's ward and also referenced Individual G-1, who was the president of Company G.

Dkt. No. 224 at 9. Individual C-1 also features in the specific allegations against Mr. Cui in the superseding indictment. *See* Dkt. No. 30 ¶¶ 1(B)(q), 54-55, 58. Not only is there a danger for Mr. Cui from being swept into the broader web of allegations against Mr. Burke and alleged 404(b) evidence (which is only admissible against Mr. Burke) in the jury's mind because Mr. Cui is alleged to have improperly retained Mr. Burke's law firm, but there is a high probability of this occurring because one of the 404(b) incidents specifically involves an overlapping individual—Individual C-1. And that incident also references Company A, which is involved in a completely separate narrative alleged in the superseding indictment involving the Post Office project. Given that tangled web, it is unclear how even diligent limiting instructions will help the jury keep straight what evidence regarding individual C-1 is admissible for considering Mr. Cui's guilt and what evidence regarding individual C-1 is only admissible for considering Mr. Burke's guilt and not Mr. Cui's guilt. It also raises questions as to whether a jury can truly be expected to silo off the different narratives—such as the Post Office project (Company A) and the Company C narrative involving Mr. Cui—when the government is going to be seeking to admit

evidence that presents the projects as intertwined.[2]

Finally, as a reminder for this Court, in addition to what evidence the government has told this Court it intends to offer at trial in the recent filings, the material produced in this case is voluminous, including more than 100 discs, hundreds of thousands of pages of material, a variety of additional electronic discovery, audio recordings, and several boxes of hard copy material—the overwhelming majority of which is unrelated to Mr. Cui and Company C. Based on undersigned counsel's review of the discovery materials, counsel anticipates that the government will seek to offer extensive evidence that is wholly unrelated to Mr. Cui or Company C, including email communications, intercepted phone calls, documents from a variety of City of Chicago departments, and extensive witness testimony all related to the Post Office project, the fast food restaurant, and the museum (all of which have no relevance to the allegations against Mr. Cui).

Mr. Cui thus renews his argument that like in *Emond* (which Judge Dow did not discuss in his prior order), this is a case that crosses the "outer limits of [a court's] discretion in deciding severance issues." *United States v. Emond*, 935 F.2d 1511, 1516–17 (7th Cir. 1991). As in *Emond*, which also involved a RICO count, "[f]or the great majority of a lengthy trial [Mr. Cui] and [his] lawyer [will be] spectators,

---

[2] Even if this Court were to decide to exclude the 404(b) evidence or co-conspirator statements, these filings are still indicative of the government's overall theory of the case and how it intends to try its case, and thus, regardless of whether any of this evidence is actually admitted, this Court must credit the government's theory of the case when weighing the prejudice that will inure to Mr. Cui in being tried along Mr. Burke.

watching as a parade of witnesses testif[y] concerning the various schemes in which [his co-defendants] were charged." *Id.* at 1517. The numerous limiting instructions "not to consider certain testimony in determining [Mr. Cui's] guilt or innocence" the government insists will be sufficient to cure any prejudice here "may [lose] their effect through sheer repetition, or may [pique] the jury's curiosity as to [Mr. Cui's] role in [his co-defendants] various misdeeds." *Id.* "[N]ot granting [Mr. Cui's] severance motion in this case [will test] the ability of jurors not to tar [Mr. Cui] with the broad brush applied to [his codefendants]." *Id.* As in *Emond*, "justice would [be] better served by trying" the case against Mr. Cui separately.

Thus, this Court should revisit the issue of severance, especially as recent government filings further confirm that failure to grant severance under Rule 14 would be an abuse of discretion. Because Mr. Cui would be unduly prejudiced by a joint trial, Counts Twelve, Thirteen, Fourteen, Fifteen, and Seventeen, as they relate to Mr. Cui, should be severed, and Mr. Cui should be tried separate and apart from the other defendants.

## CONCLUSION

For the foregoing reasons, Mr. Cui respectfully requests that the Court grant his Renewed Motion for Severance and enter an order severing the charges against Mr. Cui from that of the other defendants and ordering Mr. Cui to be tried individually.

Dated:  September 22, 2023                    Respectfully submitted,

                                                   By: */s/ Tinos Diamantatos*

Tinos Diamantatos
Megan R. Braden
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL  60606-1511
Telephone: +1.312.324.1000
Facsimile: +1.312.324.1001
tinos.diamantatos@morganlewis.com
megan.braden@morganlewis.com

*Counsel for Defendant Charles Cui*

-9-

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed on September 22, 2023, using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Tinos Diamantatos*

Tinos Diamantatos