UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 19 CR 322 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| EDWARD M. BURKE, | ) | |
| PETER J. ANDREWS, and | ) | |
| CHARLES CUI | ) | |

**<u>GOVERNMENT'S CONSOLIDATED MOTIONS IN LIMINE</u>**

MORRIS PASQUAL
Acting United States Attorney

By:   /s/ *Sarah Streicker*
AMARJEET BHACHU
DIANE MacARTHUR
SARAH STREICKER
TIMOTHY CHAPMAN
SUSHMA RAJU
Assistant United States Attorneys
219 South Dearborn Street, Fifth Floor
Chicago, Illinois 60604
(312) 353-5300

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ....................................................................................................... 1

ARGUMENT............................................................................................................. 2

I.    Government Motion *In Limine* 1: Motion to Require Notice and Proffer Before Entrapment Defense May Be Presented ...................................................................... 2

II.    Government Motion *In Limine* 2: Motion to Bar Evidence or Argument of Government Tactics and Motives..................................................................................... 5

    A.    The Court Should Exclude Evidence and Argument About the Government's Reasons for Investigating Burke.................................... 6

    B.    The Court Should Exclude Evidence and Argument About the Propriety of Investigative Techniques. ...................................................................... 8

    C.    The Court Should Exclude Allegations of Outrageous Government Conduct. 10

    D.    The Court Should Exclude Evidence and Argument About the Terms of Solis' Plea Deal Unless and Until Solis Testifies. ................................................. 11

    E.    The Court Should Exclude Evidence or Argument Inviting the Jury to Speculate About Uncharged Individuals and Government Motivations for Prosecuting the Case. ....................................................................................... 12

    F.    The Court Should Exclude Evidence and Argument About the FBI Agents' View as to Whether Andrews and Cui Would Lie............................................. 13

III.    Government Motion *In Limine* 3: Motion to Exclude Evidence and Argument Regarding Solis's Other Acts........................................................................................ 14

    A.    The Court Should Preclude Impeachment of Solis Unless and Until He Testifies........................................................................................................ 14

    B.    Defendants' Confrontation Clause and Rule 806 Arguments Are Without Merit............................................................................................................ 17

    C.    Defendants May Not Call Solis Solely to Impeach Him. ........................... 20

IV.    Government Motion *In Limine* 4: Motion to Exclude Evidence of Intent of Uncharged Individuals ............................................................................................... 21

V.    Government Motion *In Limine* 5: Motion to Exclude Evidence Regarding Individual A-1's Intent ............................................................................................... 24

VI.    Government Motion *In Limine* 6: Motion to Preclude Declarations in Opening Statements Regarding the Applicable Law .............................................................. 26

VII.    Government Motion *In Limine* 7: Motion to Bar Evidence or Arguments that Draw Comparisons Between the Memory of Third Parties and the Defendants ..... 27

VIII.    Government Motion *In Limine* 8: Motion to Exclude Argument or Evidence Designed to Elicit Jury Nullification ......................................................... 29

    A.    "Politics as Usual" ........................................................................ 30

    B.    Penalties Faced by the Defendants if Convicted........................................ 30

    C.    "Golden Rule" Arguments .......................................................... 31

IX.    Government Motion *In Limine* 9: Motion to Exclude Questions and Comments that Invite the Jury to Speculate Regarding Contents of Unplayed or Unrecorded Conversations and Portions of Such Conversations................................................... 32

X.    Government Motion *In Limine* 10: Motion to Exclude Evidence Concerning Defendants' Prior Good Conduct or Lawfulness........................................................ 33

    A.    Applicable Law ......................................................................... 33

    B.    Defendants Should Be Barred From Presenting Evidence of Non-Pertinent Character Traits. ........................................................................ 35

    C.    Defendants Should Be Barred from Presenting Evidence of Specific Acts. 37

    D.    Defendants Should Be Barred from Presenting Character Evidence Post-Dating the Charged Conduct. .......................................................... 38

XI.    Government Motion *In Limine* 11: Motion to Exclude Evidence of Witnesses' "Bad Acts" Not Involving Dishonesty and to Require Notice by Parties................. 39

XII.    Government Motion *In Limine* 12: Motion to Preclude Discovery Requests or Commentary in the Presence of the Jury ................................................... 41

XIII.    Government Motion *In Limine* 13: Motion to Preclude Commentary Regarding the Court's Evidentiary Rulings ............................................... 41

XIV.    Government Motion *In Limine* 14: Motion to Exclude Missing Witness Argument ........................................................................... 42

XV.    Government Motion *In Limine* 15: Motion to Preclude Argument Defining Reasonable Doubt ................................................................... 43

XVI.    Government Motion *In Limine* 16: Motion to Recall Government Witnesses 44

XVII.    Government Motion *In Limine* 17: Motion to Preclude Use of Agent Reports During Cross-Examination ............................................................ 46

**CONCLUSION** ........................................................................... **47**

## INTRODUCTION

The UNITED STATES OF AMERICA, through its attorney, MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, respectfully moves *in limine* with respect to the following evidentiary matters.[1]

## BACKGROUND

Defendant Edward Burke was Alderman of the 14th Ward for more than 50 years (1969 – 2023), a member of Chicago's City Council, and Chairman of the City Council's Committee on Finance. R. 30 ¶ 1g. Burke was also a lawyer and proprietor of his own law firm, Klafter & Burke, which specialized in contesting tax assessments made on real property. *Id.* ¶ 1h. Defendant Peter Andrews worked for Burke in Burke's ward office. *Id.* ¶ 1n. Defendant Charles Cui was a managing member of Company C, which owned property in Chicago. *Id.* ¶¶ 1o, 1p. Cui retained Klafter & Burke after the City denied a permit application for one of Company C's properties. *Id.* ¶¶ 51, 52, 57, 58, 64.

Between no later than 2016 and continuing through 2018, Burke used his positions as Alderman and Chairman of the Committee on Finance to solicit, attempt to solicit, and receive bribes from parties having business with the City of Chicago or subject to Burke's and fellow Alderman Daniel Solis's authority as Aldermen. *Id.* ¶¶ 3, 4. Burke received and solicited these bribes in the form of fees arising from the retention of Klafter & Burke, as well as through private benefits for Burke's

---

[1] The government further moves instanter for permission to file this motion, which exceeds 15 pages. This consolidated motion raises multiple distinct issues, each of which could have been filed separately. For ease of reference, the government has filed these motions in a single filing.

associates. *Id.* ¶ 4. Count One of the superseding indictment charges Burke with racketeering, and alleges that he engaged in five racketeering acts, a subsidiary conspiracy, and substantive offenses that center around the following four episodes:

(1)  Burke's repeated efforts to shakedown the developer of the Old Post Office in Chicago for legal work for his law firm;

(2)  Burke's and Andrew's efforts to shakedown the owners of fast-food restaurants, including a fast-food restaurant in Burke's ward, again for work for Burke's law firm;

(3)  Burke's acceptance of legal work from Cui, which was corruptly directed to Burke's law firm in return for his official assistance in obtaining a permit for Cui's business; and

(4)  Burke's attempt to extort a local museum in order to obtain a job for the child of a personal acquaintance.

Defendants Andrews and Cui are charged with substantive offenses related to their participation in the above incidents, as well as their lies to federal law enforcement.[2]

## ARGUMENT

## I. GOVERNMENT MOTION *IN LIMINE* 1: MOTION TO REQUIRE NOTICE AND PROFFER BEFORE ENTRAPMENT DEFENSE MAY BE PRESENTED

The government has repeatedly asked defendants if they intend to raise an entrapment defense at trial and has received no response. Defendants recently agreed to inform the government of their intent to raise an entrapment defense on or before October 16, 2023.

---

[2] The government incorporates the factual summary set forth in its *Santiago* proffer (R. 225) and its Consolidated Response to Defendants' Pretrial Motions, (R. 139 (under seal) and 140 (redacted version publicly filed)).

The affirmative defense of entrapment requires proof by the defendant of two elements: (1) government inducement of the crime; and (2) a lack of predisposition on the part of the defendant to engage in criminal conduct. *United States v. Blassingame*, 197 F.3d 271, 280 (7th Cir. 1999) (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)). The defendant is "entitled to a jury instruction on the defense whenever there is sufficient evidence from which a reasonable jury could find entrapment." *United States v. Mayfield*, 771 F.3d 417, 440 (7th Cir. 2014) (en banc) (internal quotations omitted). "[T]o obtain a jury instruction and shift the burden of disproving entrapment to the government, the defendant must proffer evidence on both elements of the defense." *Id*. This "initial burden of production is not great. An entrapment instruction is warranted if the defendant proffers some evidence that the government induced him to commit the crime and he was not predisposed to commit it." *Id*. (internal citations and quotations omitted).

To show inducement, defendant must show that a government agent solicited defendant to commit the charged crime and did "something in addition that could influence a person to commit a crime that the person would not commit if left to his own devices." William J. Bauer Pattern Jury Instructions § 6.05 (2022); *see generally Mayfield*, 771 F.3d 417. The other conduct may consist of repeated attempts at persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward beyond what is inherent in the usual commission of the crime, pleas based on need, or any other conduct that creates a risk that a person "who would not commit the crime if left to his own devices will do so in response to the efforts of

law enforcement." *Id.* A predisposed person is one "who takes advantage of an ordinary opportunity to commit criminal acts—not an extraordinary opportunity, the sort of thing that might entice an otherwise law-abiding person . . . ." *United States v. Evans*, 924 F.2d 714, 717 (7th Cir. 1991).

In determining whether a defendant was (or was not) predisposed to commit a crime, the following factors are relevant: (1) the defendant's character or reputation; (2) whether the government initially suggested the criminal activity; (3) whether the defendant engaged in the criminal activity for profit; (4) whether defendant evidenced a reluctance to commit the offense that was overcome by government persuasion; and (5) the nature of the inducement or persuasion by the government. *Blassingame*, 197 F.3d at 281. Of these, "the most important factor . . . is whether the defendant evidenced reluctance to engage in criminal activity which was overcome by repeated Government inducement." *United States v. Kaminski*, 703 F.2d 1004, 1008 (7th Cir. 1983) (internal quotation marks omitted). *See also United States v. Casanova*, 970 F.2d 371, 375 (7th Cir. 1992).

The government does not believe the defendants will be able to meet this standard because, among other reasons, it did not induce them as a matter of law. *See Mayfield*, 771 F.3d at 434 ("We hold that inducement means more than mere government solicitation of the crime; the fact that government agents initiated contact with the defendant, suggested the crime, or furnished the ordinary opportunity to commit it is insufficient to show inducement.").

In any event, in order to prevent this complex evidentiary issue from arising at or shortly before trial, the government respectfully requests that the Court require the defendants to promptly state whether they will request an entrapment instruction and present a pre-trial proffer of any evidence they intend to introduce in support of an entrapment defense. As the Seventh Circuit has explained, "there exists substantial legal authority" to require a defendant to make a sufficient proffer of entrapment evidence before presenting the defense before a jury, and a court is entitled to bar the defense if a defendant fails to submit such a proffer. *Blassingame*, 197 F.3d at 279-80. *See also United States v. Millet*, 510 F.3d 668, 675 (7th Cir. 2007) ("When claiming entrapment, a defendant must proffer evidence in support of both of the elements of entrapment . . . .") (citations omitted).

Moreover, if the defendants present an entrapment defense, this may alter the scope of the evidence the government will seek to admit trial and, correspondingly, the government's discovery and disclosure obligations. Accordingly, the government respectfully requests that the Court require the defendants to do the following on or before October 16, 2023: (1) state whether they will request an entrapment instruction, and (2) if so, present a pre-trial proffer of any evidence they intend to introduce in support of an entrapment defense.

## II.    GOVERNMENT MOTION *IN LIMINE* 2: MOTION TO BAR EVIDENCE OR ARGUMENT OF GOVERNMENT TACTICS AND MOTIVES

The government respectfully moves *in limine* to bar evidence or argument that concerns the government's tactics or that seeks to put the government's motivations for prosecution at issue. Such evidence or testimony should not be allowed.

### A.    The Court Should Exclude Evidence and Argument About the Government's Reasons for Investigating Burke.

Burke states in his discovery motion related to cooperator Daniel Solis, that "Burke is entitled to impeach the agent-witnesses with their typed statements in order to demonstrate their bias, interest, and motive against Burke, and for any inconsistent statements," in part because "the government and its cooperator went to extreme lengths to prosecute Mr. Burke—notwithstanding his lack of a corrupt relationship with Solis, and the inconsequential nature of the so-called predication to investigate Burke following his benign referral of a contractor to Solis in the summer of 2016." R. 232 at 14. Burke further argues that the FBI went to "lengths . . . in order to engineer a crime in a situation where there was none." *Id.* Based on these and other statements, it appears that Burke intends to argue as well as cross-examine law enforcement witnesses about the government's motivations, in an apparent effort to suggest that the Burke was not predisposed to commit any crimes before his first recorded interactions with Solis. This is plainly an effort to question the government's motives, which would be improper regardless of whether the defendant affirmatively pursues an entrapment defense.

Even if Burke can properly assert an entrapment defense, cross-examination regarding agents' reasons for investigating Burke is improper and irrelevant. Inquiries regarding the subjective intentions or motivations of a government agent or investigating officer are irrelevant to determining the factual guilt or innocence of a defendant. *See, e.g., United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994) (noting that, even in the context of an entrapment defense, the trial court properly

6

did not "allow the defense to mount an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant"); *see also United States v. Boyd*, 55 F.3d 239, 241-42 (7th Cir. 1995) ("outrageous government misconduct" is no defense to a criminal charge).

There is an "increasing tendency in criminal cases to try some person other than the defendant and some issues other than his guilt." *United States v. Griffin*, 867 F. Supp. 1347, 1347 (N.D. Ill. 1994) (Zagel, J.), *aff'd*, 84 F.3d 820 (7th Cir. 1996), amended (June 3, 1996) (internal quotation marks and citation omitted). The "thrust of the defense" in these types of cases "is this: the prosecution was not nice or could have done it better and so the jury ought to acquit, whether or not guilt has been proved beyond a reasonable doubt." *Id*. In the face of this increasing tendency to interject themes of "government misconduct" into a defense strategy, courts routinely have granted motions *in limine* "to bar defendants from presenting evidence or making arguments to the jury suggesting that they should be acquitted because the government engaged in misconduct in the course of its investigation." *United States v. Shields*, No. 90 CR 1044, 1991 WL 236492, at *3 (N.D. Ill. Aug. 13, 1991) (Rovner, J.); *see also United States v. Chaparro*, No. 16 CR 50010, 2018 WL 11249348, at *2 (N.D. Ill. Jan. 26, 2018) (Kapala, J.); *United States v. Maciel*, No. 10 CR 652, 2012 WL 13196094, at *1 (N.D. Ill. Feb. 21, 2012) (St. Eve, J.); *United States v. Davis*, 673 F. Supp. 252, 261-62 (N.D. Ill. 1987) (Williams, J.).

Based on this clear case law, the defendants should be precluded from improperly eliciting evidence and pursuing arguments questioning the reasons for

investigating Burke or otherwise impugning the government's motives and conduct in this prosecution.

**B.    The Court Should Exclude Evidence and Argument About the Propriety of Investigative Techniques.**

Questions designed to challenge the propriety of investigative techniques used by the government—including ruses and scripts used by Solis and other deceptive techniques—are also improper. Of course, "'it has long been acknowledged . . . that, in the detection of many types of crime, the Government is entitled to use decoys and to conceal the identity of its agents.'" *United States v. McKnight*, 665 F.3d 786, 791 (7th Cir. 2011) (quoting *Lewis v. United States*, 385 U.S. 206, 208-09 (1966)). Indeed, in *McKnight*, the Seventh Circuit approved an instruction that informed the jury that the use of such techniques was not to factor into their deliberations in any way. *Id.* Any argument attacking the government's investigative techniques would not only be improper, but it should also trigger an instruction that such investigative techniques are entirely proper. William J. Bauer Pattern Jury Instructions § 3.19 (2022). Accordingly, the defendants should be precluded from introducing evidence or argument suggesting that it was improper for the government "to direct Solis to lie to Burke and deceive him into believing [Individual A-1] . . . was interested in hiring Burke." R. 232 at 5. Again, Burke is on trial, not the government's use of wholly appropriate investigative techniques. Any suggestion that the government acted improperly would be legally inaccurate, irrelevant, and unduly prejudicial and confusing, and thus should be excluded under Federal Rules of Evidence 401 and 403.

8

Investigative steps not taken similarly have little or no probative value. *See, e.g., United States v. Daley Thompson*, 21 CR 279, Dkt. 95 at 12 (N.D. Ill. Jan. 19, 2022) (Valderrama, J.) (excluding evidence or argument regarding the investigative steps not taken by the government during its investigation because "none of the government agencies involved with this case are on trial, and evidence or questions regarding steps not taken by them has limited or no probative value").

District courts have substantial discretion to circumscribe or prohibit questions focused solely on the quality of the government's investigation, as these questions may tend to distract the jury from its duty of weighing whether the defendant is guilty or not guilty. *See, e.g., United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994) (district court did not abuse its discretion in excluding evidence of "sloppy" investigation as irrelevant, because "the jury would not be called upon to determine whether the government's investigation had been good or bad"); *United States v. Zaccaria*, 240 F.3d 75, 81 (1st Cir. 2001) (district court did not err in excluding questions regarding agent's failure to administer polygraph tests for certain witnesses, because the "relevance to the appellant's guilt or innocence is so tenuous as to place it at the margins of allowable cross-examination (and, therefore, within the discretion of the presider to admit or exclude)"); *United States v. McVeigh*, 153 F.3d 1166, 1192 (10th Cir. 1998). It is an appropriate exercise of the Court's discretion under Federal Rule of Evidence 403 to "limit argument on tangential issues that could confuse the jury," including "a defendant's complaints about the adequacy of the government's investigation." *United States v. Estell*, 641 Fed. App. 552, 556

9

(7th Cir. 2016). A district court is therefore permitted to prohibit a defendant from asking questions about "other evidence that might have been developed if the investigation had been carried out in some other way," particularly when the defendant can only speculate about what, if anything, the defendant's proposed hypothetical investigation would have uncovered. *United States v. Robbins*, 197 F.3d 829, 845 (7th Cir. 1999) (affirming exclusion of cross-examination about extent of the investigation and whether the agent "had investigated the length of time that [a co-defendant] and [defendant] had known each other").

Unless a defendant can connect his line of questioning with other evidence in the case or with a specific defense, such an inquiry has limited probative value and risks substantial prejudice. *See United States v. Patrick*, 248 F.3d 11, 23 (1st Cir. 2001) ("[s]uch speculative evidence of the inadequacy of the police investigation would have shifted the jury's focus from the accusations against [the defendant] to accusations against the police, thus creating a real danger of unfair prejudice and jury confusion that 'substantially outweighed' the evidence's probative value"); *United States v. Farella*, No. 09 CR 87, 2013 WL 4029115, at *13 (N.D. Ill. Aug. 8, 2013) (Lefkow, J.) (precluding defendant from asking cross-examination questions about the government's failure to intercept and record phone calls).

## C. The Court Should Exclude Allegations of Outrageous Government Conduct.

Claims of alleged misconduct or outrageous conduct on the part of the prosecutor or investigating agents are similarly irrelevant to the merits of the case.

Thus, suggesting to the jury that alleged misconduct provides a basis for acquittal improperly invites the jury to nullify.

Although the government is not aware of any misconduct by government agents, the government nevertheless seeks to exclude any allegations of any such misconduct in the presence of the jury. Arguments pertaining to governmental misconduct to the jury are improper for two reasons. First, and most fundamentally, the Seventh Circuit has repeatedly rejected the outrageous government conduct defense and has held that such claims afford no defense to a criminal prosecution as a matter of law. *Conley v. United States,* 5 F.4th 781, 799 (7th Cir. 2021) (quotation marks omitted) (describing the "uniform wall of precedent" rejecting the defense and citing cases). Second, "the issue of outrageous government conduct is not an issue for the jury," but is a matter for determination by the court. *United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) (citations omitted); *see also Boyd*, 55 F.3d at 241-42. Accordingly, defendants should be precluded from attempting to defend this case by attacking the propriety of the government's conduct.

**D.    The Court Should Exclude Evidence and Argument About the Terms of Solis' Plea Deal Unless and Until Solis Testifies.**

Burke ostensibly plans to question agents concerning what they view as an "unprecedented" sweetheart deal given to Solis that "shield[s] him from any meaningful consequences for his years of corrupt public service" and "conveyed a huge financial benefit on Solis." R. 232 at 6. But, as discussed in more detail below, the government's agreement with Solis has no bearing on the agents' credibility, bias, or

motives, or that of any other witness on government's witness list, and therefore would be an improper subject of cross-examination.

### E. The Court Should Exclude Evidence or Argument Inviting the Jury to Speculate About Uncharged Individuals and Government Motivations for Prosecuting the Case.

The government also requests that the Court bar defendants from introducing evidence or making arguments pertaining to the prosecutorial decision to investigate or prosecute these defendants, and not others.

Generally speaking, the decision on "whether or not to prosecute" and "what charge to file" rests entirely in the prosecutor's discretion. *Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978); *Wayte v. United States,* 470 U.S. 598, 607 (1985) ("[S]o long as the prosecutor had probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.") (quotations and citations omitted). The decision on whether to prosecute "involves consideration of myriad factors such as the enforcement priorities of the office, the determination as to the strength of the case, the prosecutorial resources available, and the prosecution's general deterrence values." *United States v. Ribota,* 792 F.3d 837, 840 (7th Cir. 2015). Accordingly, argument about the government's prosecutorial decision-making is "extraneous and collateral" and, thus, properly excluded from trial. *United States v. Johnson,* 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument" under Rule 403).

The issue at trial is whether the government will prove that *these* defendants committed the alleged crimes. Any evidence or argument about prosecutors' decisions not to charge others referenced in the indictment would be extraneous and irrelevant. *See United States v. Young*, 20 F.3d 758, 765 (7th Cir. 1994) ("Whether or not [a coconspirator] was criminally charged does not make the facts relating to [the defendant's] knowledge and participation . . . more or less probable."). Discussing the government's charging decisions as to other individuals would lead to improper speculation by the jury and invite an inappropriate minitrial concerning how the conduct of uncharged individuals compares to those charged in this case.

To the extent defendants wish to raise these issues, they must do so with the Court, not the jury. *See United States v. Jarrett*, 705 F.2d 198, 204-05 (7th Cir. 1983) (claims of selective prosecution must be raised before trial); *United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983) ("the issue of selective prosecution is one to be determined by the court").

For these reasons, the government seeks to exclude evidence regarding the prosecutorial motives for prosecuting these defendants and any decision concerning charges against other individuals.

### F. The Court Should Exclude Evidence and Argument About the FBI Agents' View as to Whether Andrews and Cui Would Lie.

Regarding the false statement counts against Andrews (Count 10) and Cui (Count 17), the defendants should not be permitted to elicit testimony concerning whether the FBI thought the defendants might lie. That topic would be irrelevant to materiality: "[t]hat the prosecutors knew (or thought they knew) the answers to the

13

questions they asked [the defendant] does not make the information less material. . . . That prosecutors strongly suspected that [the defendant] would lie rather than reveal his knowledge does not make the questions improper, let alone enable him to escape the punishment that attaches to deceit when the grand jury is entitled to hear the truth." *United States v. Robert A. Burke*, 425 F.3d 400, 409 (7th Cir. 2005) (addressing perjury charge).

Based on the Seventh Circuit's precedent and the case law barring argument concerning government motivations, as well as the fact that such evidence is immaterial, the Court should preclude any argument suggesting that the government was not actually seeking truthful testimony from defendants. In addition to being false, this argument improperly misleads the jury and invites jury nullification.

## III. GOVERNMENT MOTION *IN LIMINE* 3: MOTION TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING SOLIS'S OTHER ACTS

The government respectfully moves *in limine* to bar evidence or argument regarding Daniel Solis' prior acts and the terms of his plea agreement with the government, unless and until he testifies at trial.

### A. The Court Should Preclude Impeachment of Solis Unless and Until He Testifies.

It is commonplace for courts to bar defense efforts to impeach non-testifying cooperators and informants where their statements are not offered for their truth. *See, e.g., United States v. Lewis*, No. 07 CR 07, 2008 WL 5083131, at *5 (N.D. Ill. Nov. 25, 2008) (Kendall, J.), *aff'd*, 641 F.3d 773 (7th Cir. 2011). The government does not intend to call Daniel Solis as a witness at trial, though may do so if Burke is permitted to raise an entrapment defense or the Court denies the government's motion to admit

Solis's recordings without his testimony. R. 226. If he is not called as a witness, the government does not intend to introduce any of Solis' statements for their truth, but only to provide context for Burke's statements on the recordings. In addition, the government intends to request a limiting instruction to that effect.

In his motion requesting discovery, Burke makes clear that he intends to attack Solis at trial, irrespective of whether Solis testifies. Specifically, Burke claims that "[t]he government's investigation into Solis revealed him to be a morally bankrupt and corrupt public official engaged in rank *quid pro quo* bribery and the abuse of his public office for the enrichment of himself and others, including the receipt of sex acts, Viagra, and luxury travel." R. 232 at 2. Burke further describes Solis's agreement with the government as "an unprecedented deferred prosecution agreement" that "shield[s] him from any meaningful consequences for his years of corrupt public service" and "conveyed a huge financial benefit on Solis." *Id.* at 6. Defendants should not be permitted to impeach Solis through other witnesses on these and similar topics.[3]

As this Court has ruled, there is no right to cross-examine or impeach an informant who does not testify and whose statements are introduced only to provide context to otherwise admissible statements. *See Lewis*, 2008 WL 5083131, at *5 (because non-testifying informant was not a "witness," defendants were not entitled

---

[3] The government recognizes that defendant Burke may seek to introduce much of this information attacking Solis during opening statements based on his position that he will or may call Solis as a witness during the defense case-in-chief. But, because Burke may determine not to call Solis to testify after all, the government requests that the parties and the Court confer prior to opening statements about the scope of representations about Solis that may be made in opening statements if Solis is included on the defense witness list.

to cross-examine or impeach the informant). Defendants should therefore be barred from impeaching or cross-examining Solis about his past acts and the terms of his plea agreement if he does not testify as a government witness. Those topics are irrelevant, confusing, and unfairly prejudicial under Federal Rules of Evidence 401 and 403 in the event he is not called to testify, as the government will not be asking the jury to believe or disbelieve anything Solis says. Solis's statements will be introduced only to put Burke's own actions and statements into context.

The defendants should thus be barred from attempting to impeach or attack Solis' credibility through other government witnesses. In *United States v. Jackson*, 540 F.3d 578 (7th Cir. 2008), for example, a co-defendant in a mortgage fraud scheme pleaded guilty and then began cooperating with the government, until it was revealed that the cooperator had lied to the government. The cooperator did not testify at trial, but the defendants nevertheless sought to introduce evidence that the cooperator had recanted her prior statements and lied to the government. The Seventh Circuit held that the district court did not abuse its discretion in excluding this evidence. *Id.* at 588-89. The Seventh Circuit observed that "by offering [the cooperator's] recanting statements," the defendant sought to "impeach [her] on a collateral matter." *Id.* at 588. But, as the court noted, "it is well-settled that one may not impeach by contradiction regarding collateral or irrelevant matters and that a party may not contradict for the sake of contradiction." *Id.* (*quoting United States v. Bitterman*, 320 F.3d 723, 727 (7th Cir. 2003)). The court found that rule "equally applicable where a party attempts to put a non-testifying person's statement before the trier of fact solely

to impeach that person." *Id.* Because the cooperator's earlier statements were not before the jury for determination, "[t]he only purpose of presenting evidence that Ms. Hubbard recanted prior statements implicating Ms. Shaw in the Young wire transfer was to prove that Ms. Hubbard was lying. But '[m]erely attempting to prove that a witness is lying is not a proper purpose of impeachment by contradiction.'" *Id.* (citations omitted). The Seventh Circuit further stated that "the district judge could have excluded this collateral and irrelevant evidence under Fed. R. Evid. 403 because its tendency to mislead and confuse the jury outweighed its negligible probative value." *Id.*

For the reasons set forth in *Jackson*, defendants' efforts to put Solis's past conduct at issue for the sole purpose of impeaching him are improper and irrelevant. Solis's prior bad acts and his plea agreement have no bearing on defendants' intent in this case or on any other issues in dispute in this case. Accordingly, the Court should bar any questioning of witnesses about Solis's plea agreement and his past acts, including any charged or alleged criminal conduct or other purported bad acts, unless and until Solis testifies.

## B. Defendants' Confrontation Clause and Rule 806 Arguments Are Without Merit.

Despite the common practice of barring defense efforts to impeach non-testifying cooperators and informants where their statements are not offered for their truth, Burke suggests that his confrontation rights are violated by the government's decision not to call Solis. R. 232 at 6. This claim is frivolous.

17

The Seventh Circuit has rejected this exact argument. In *United States v. Davis*, 890 F.2d 1373, 1379-80 (7th Cir. 1989), a defendant in a public corruption case argued that "his sixth amendment right to confront the witnesses against him was violated when the trial court admitted the tape recordings of his conversations with [government informant] Burnett when Burnett was not called to testify." *Id.* at 1379. The Seventh Circuit disagreed, holding that the informant's side of recorded conversations were properly admitted to place defendant's verbal acts and conduct in context, with a limiting instruction that they would not be offered for their truth. *Id.* at 1380. The court held that "the defendant's Sixth Amendment interests are not implicated because he was not prohibited from cross-examining any witnesses against him," and the admission of the informant's statements on the recordings "do not implicate Davis's Sixth Amendment rights because the tape recorded statements were admitted for the limited purpose of placing Davis's statements in context." *Id.* This rule remains the law of the Circuit. *See United States v. Jackson*, 940 F.3d 347, 352 (7th Cir. 2019) (admission of statements made by cooperating informant in recordings for purposes of context and understanding defendant's responses did not violate Confrontation Clause).

Accordingly, there is no Confrontation Clause issue with admitting Solis's portion of conversations with Burke without Solis's testimony. *See also United States v. Rollins*, 862 F.2d 1282, 1297 (7th Cir. 1988); *Lewis*, 2008 WL 5083131, at *5 (collecting cases standing for the proposition that "[w]hen recorded evidence is admitted in the absence of testimony by the informant who recorded the conversation,

18

the Confrontation Clause of the Sixth Amendment is not violated when the statements are not being offered for their truth, but only to provide context for the defendant's admissible statements").

Federal Rule of Evidence 806 also does not permit impeachment of Solis if he does not testify. That rule only allows a party to attack the credibility of a declarant whose hearsay statement is admitted in evidence. Solis's statements in recordings are not hearsay because they will not be offered for their truth. Accordingly, Rule 806 does not apply. *See United States v. McClain*, 934 F.2d 822, 832-33 (7th Cir. 1991) (no confrontation clause or Rule 806 issue where district court did not permit defendants to impeach non-testifying informant whose statements on recordings "were not hearsay, for they were not admitted for the truth of their assertions"); *Lewis*, 2008 WL 5083131, at *4 ("Rule 806 does not confer a right to cross-examine or impeach the CI.").

Burke recognizes this settled case law but argues that: "If any taped statement the government successfully admits is determined by the Court to be offered for the truth of Solis' assertions, and it is essentially certain that it will, the defense will be free to cross-examine the proffering witness and invoke its rights under Federal Rule of Evidence 806 to impeach a nontestifying declarant." R. 245 at 4-5. This is a theatrical argument, because the government will not be offering Solis' statements for their truth and the government will ask for such an instruction to that effect, as is commonplace.

## C.    Defendants May Not Call Solis Solely to Impeach Him.

Defendants should not be permitted to call Solis in their case-in-chief for the sole purpose of impeaching him. Through their pretrial filings, the defendants have made clear their intention to try and drag Solis through the mud—and suggest they may call him themselves for this purpose. *E.g.,* R. 245 at 1 ("There is little wonder why the government takes this position [not to call Solis] given how fundamentally corrupt Solis is. . . .").

To call a witness for this purpose is unquestionably improper. *See United States v. Kielar*, 791 F.3d 733, 744-45 (7th Cir. 2015). The Seventh Circuit has repeatedly warned against allowing a party to call a witness it knows will not give useful evidence, just so the party may then introduce otherwise inadmissible impeachment evidence. *See United States v. Taylor*, 522 F.3d 731, 736 (7th Cir. 2008) ("You are not permitted to cross-examine a witness about a particular topic without a good-faith belief that the answers will be helpful to your case, as distinct from hoping that the question alone will insinuate a helpful answer."); *United States v. Medley*, 913 F.2d 1248, 1257 (7th Cir. 1990) (prohibiting calling a witness to impeach where it is a "subterfuge to get before the jury evidence otherwise not admissible"); *United States v. Webster*, 734 F.2d 1191, 1192 (7th Cir. 1984). The defense may not call Solis as a gateway to launching an otherwise inadmissible accusatory and degrading attack on the witness.

In *Giles*, for example, the Seventh Circuit noted that the "true defense reason . . . for wanting to put [the witness] on the stand was to expose his warts to the jury and float the inference that the FBI should not play footsie with a sleazeball,"

referring to a cooperator who the government did not call in its case-in-chief. *United States v. Giles*, 246 F.3d 966, 974 (7th Cir. 2001). Defendants may likewise hope to float a variety of accusations and innuendo against Solis, but this should not be permitted under Rules 403, and Rules 404(a) and (b).

To prevent against abuse of the litigation process and to protect the government's right to a fair trial, the government requests that defendants be required to make a showing of the relevance of any expected testimony from Solis, in the event they seek to call him as a witness, and the good faith basis for defendants' belief that Solis's testimony will assist him save impeachment.

## IV. GOVERNMENT MOTION *IN LIMINE* 4: MOTION TO EXCLUDE EVIDENCE OF INTENT OF UNCHARGED INDIVIDUALS

The government respectfully moves to bar questioning of witnesses concerning whether they believed their conduct was legal or illegal. As an example, defendants should not be permitted to ask the extortion victims, who will be testifying during the government's case-in-chief, "Did you think you broke the law by agreeing to give Burke's law firm business?"

Under settled law, "lay testimony offering a legal conclusion is inadmissible." *United States v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009) (collecting cases). Legal conclusions offered by lay witnesses fail to meet the requirements of Federal Rule of Evidence 701, in that they are not helpful to the jury. *Id*. Indeed, they invite mistakes and confusion: to the extent such legal conclusions are based on misunderstandings of the law, the jury may rely on those misunderstandings, rather than on the legal

instructions provided by the Court. "[A] lay witness's purpose is to inform the jury what is in evidence, not to tell it what inferences to draw from that evidence." *Id.*

Based on this principle, courts have barred testimony related to whether certain conduct was, or was believed to be, legal or illegal or legitimate or illegitimate, or whether certain conduct satisfied an element at issue in the case. *See, e.g.*, *United States v. Baskes*, 649 F.2d 471, 478 (7th Cir. 1980) (affirming prohibition of cross-examination of co-conspirator witness regarding the witness's views of whether he and the defendant "conspired" or otherwise engaged in conduct that was "unlawful" or "willful"); *United States v. Van Eyl*, No. 02 CR 287, 2004 WL 1557331, at *3 (N.D. Ill. July 8, 2004), *aff'd* 468 F.3d 428, 437 (7th Cir. 2006) (excluding opinions by defendant's coworkers, including the coworkers' use of legally and morally charged words, regarding the legality or propriety of the defendant's conduct, and finding that government was not permitted to argue that everyone else "could tell" there was a fraud).[4] Likewise, courts have barred testimony related to whether defendants believed their own actions were legal. *United States v. Wantuch*, 525 F.3d 505, 512-15 (7th Cir. 2008) (holding that it was improper for government to ask witnesses to opine whether the defendant believed his conduct to be "legitimate" or legal).

Witnesses' testimony concerning whether they believed they were committing a crime has no relevance to defendants' intent; "the knowledge or mental state of one

---

[4] *See also United States v. Van Eyl*, 468 F.3d 428, 437 (7th Cir. 2006) (district court acted within its discretion in excluding lay opinion testimony from coworkers regarding the legality of the defendant's conduct—to avoid the jury inappropriately using those witnesses' opinions to determine the defendant's state of mind—and then granting a new trial when the government violated this ruling in its closing argument).

person or entity has little or no probative value as to the knowledge or mental state of another person or entity." *Kelley as Trustee of BMO Litigation Trust v. BMO Harris Bank N.A.*, 634 F. Supp.3d 619, 633 (D. Minn. 2022) (excluding evidence of knowledge and state of mind of federal investigators as irrelevant to determine state of mind of other parties). Here, other witnesses' mental states shed no light on what the *defendants* believed. *United States v. Benalcazar*, No. 09 CR 144, 2011 WL 4553027, at *11 (N.D. Ill. Sept. 29, 2011) (Kendall, J.), is instructive. There, the defendant in a tax conspiracy case sought to introduce "evidence of other witnesses' lack of knowledge as to the legality of the scheme to serve as circumstantial evidence that he also lacked the necessary knowledge." *Id.* The Court "disallowed such testimony because one person's state of mind is irrelevant to what another person actually believed." *Id.* Thus, witnesses' perceptions and opinions were only relevant to the extent they were communicated to the defendants.

Testimony concerning witnesses' views as to legality would be inadmissible for the additional reason that a mistake of law or good faith defense is not permitted. Such a defense is only permitted where the charged statute contains a term such as "willful" that makes knowledge of the law essential. *See* William J. Bauer Pattern Jury Instructions § 6.10 (2022). None of the charges in the indictment require willfulness, and thus mistake of law is not a defense. *See, e.g., United States v. Blagojevich*, 794 F.3d 729, 738 (7th Cir. 2015) (addressing § 666). The jurors will be charged with determining defendants' intent, and not anyone else's. To illustrate the point, if the government calls witnesses to give their opinion that they thought Burke

committed a crime, the defendants would correctly and undoubtedly object. It is improper to suggest that ignorance of the law—by defendants or any witness—is a defense to the corruption-related charges because willfulness is not an element.

Defendants may argue that victims' state of mind is relevant to the attempted extortion count, because the government must show that "the victim's fear was reasonable under the circumstances." William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit (2022) at 783. But the focus of this instruction is on whether the victim felt threatened by the defendant's actions. Whether or not the victim thought their actions were lawful or unlawful is wholly irrelevant.

For the reasons discussed above, the government requests that evidence of witnesses' views as to the legality of their conduct be prohibited absent prior notice and a ruling from the Court that in the particular circumstances such evidence is relevant and admissible.

## V. GOVERNMENT MOTION *IN LIMINE* 5: MOTION TO EXCLUDE EVIDENCE REGARDING INDIVIDUAL A-1'S INTENT

The government respectfully moves *in limine* to bar evidence regarding Individual A-1's intent. Individual A-1 is an executive from the company that redeveloped the Old Post Office, from whom Burke solicited legal business. When Individual A-1 initially did not give legal business to Burke, Burke told Solis that he was not inclined to provide any official assistance to the Post Office project, making statements such as "the cash register has not rung yet" and "if we're not signed up, I'm not gonna do any lifting for this guy." The government does not intend to call Individual A-1 as a witness at trial, yet it appears Burke intends to elicit testimony

concerning Individual A-1's interview with the government. Even if Individual A-1 testifies, his beliefs and opinions at the time of his government interview are not relevant or admissible.

In his recent discovery motion, Burke stated that Individual A-1 told the government that Individual A-1 experienced "15 months of harassment" to give Burke tax work for the Old Post Office but felt that "'98 percent' of the pressure was from Ald. Solis—or put another way, from the government itself." R. 232 at 5. Burke further stated that Individual A-1 thought Burke was "out of touch," "not a force," and did not have influence on the assistance the company sought by the Old Post Office, so in Individual A-1's mind there was no "quid pro quo." *Id.* at 6. Burke then boldly claims that Individual A-1 "wholly repudiates the government's theory that Mr. Burke committed bribery with respect to the Old Post Office project." *Id.*

Individual A-1's after-the-fact explanation of his interactions with Burke has no relevance on *Burke's* intent or any other issue in dispute in this case—and certainly does not repudiate the government's theory. As discussed above, other witnesses' mental states shed no light on what the Burke believed. *Benalcazar*, 2011 WL 4553027, at *11. It is Burke's intent that matters, and Burke's statements very clearly demonstrate Burke's intention to corruptly solicit legal business from Individual A-1 in exchange for Burke's official assistance.

Put differently, it is of no consequence whether Individual A-1 wished to provide legal business to Burke. The offense of bribe solicitation does not require the participation of both the individual seeking a bribe as well as the intended bribe-

payor. *See, e.g., United States v. Morgan*, 635 F. App'x 423, 428-32 (10th Cir. 2015) (bribery does not require both parties to bribe having corrupt intent; the focus in prosecution of bribe recipient is on "whether he had the intent to receive the retainer fees . . . in exchange for his legislative influence"); *United States v. Ring*, 706 F.3d 460, 467-68 (D.C. Cir. 2013) (no completed corrupt exchange or agreement is necessary in honest services fraud prosecutions; the statute punishes the scheme, not its success); *United States v. Avenatti*, 432 F. Supp. 3d 354, 364 (S.D.N.Y. 2020) (honest services fraud effected by bribery does not require a third party to agree to a corrupt exchange and their state of mind is "legally irrelevant because the focus of the crime is on the defendant's state of mind") (citations omitted).

Further, to prove bribery under Illinois law, it is not necessary to show that the bribe payor actually received a benefit from the bribe. *United States v. Hocking*, 860 F.2d 769, 778 (7th Cir. 1988). The same is true for a violation of § 666. *See United States v. Whiteagle*, 759 F.3d 734, 753 (7th Cir. 2014). Thus, the fact that Company A never paid legal fees to Burke's firm is irrelevant.

## VI. GOVERNMENT MOTION *IN LIMINE* 6: MOTION TO PRECLUDE DECLARATIONS IN OPENING STATEMENTS REGARDING THE APPLICABLE LAW

The government respectfully moves *in limine* for an order directing the parties to refrain from defining the applicable law during opening statements.

It is within the Court's discretion to instruct counsel to refrain from legal argument in opening statements. *E.g., Schwartz v. Sys. Software Assocs.*, Inc., 32 F.3d 284, 288 (7th Cir. 1994) (citing *United States v. Dinitz*, 424 U.S. 600, 612 (Burger, C.J., concurring)). This is wholly appropriate, because opening statements describe

what each party believes the evidence will show, not what the law is. Because the Court will instruct the jury on the applicable law at the end of trial, and there are likely to be substantial disputes concerning the jury instructions, the parties should refrain from attempting to deliver statements about applicable legal principles during opening statements.

### VII. GOVERNMENT MOTION *IN LIMINE* 7: MOTION TO BAR EVIDENCE OR ARGUMENTS THAT DRAW COMPARISONS BETWEEN THE MEMORY OF THIRD PARTIES AND THE DEFENDANTS

As relevant to the false-statement charges against Andrews (Count 10) and Cui (Count 17), defendants should be barred from eliciting evidence or argument that suggests the government treated Andrews and Cui differently by asking other witnesses whether the government sought to refresh their recollections by showing them documents or recordings prior to interviewing them.

As discussed above, the conduct or state of mind of one individual generally is not probative of the conduct or state of mind of another. *See Benalcazar*, 2011 WL 4553027, at *11 (excluding evidence of other witnesses' lack of knowledge as to the legality of the scheme "because one person's state of mind is irrelevant to what another person actually believed"). Each witness decides for himself whether to provide truthful information or to lie. While one witness may honestly fail to recall certain details, another witness may choose to falsely claim that he does not recall certain facts in a deliberate effort to avoid providing information he considers damaging.

Based on these principles, the defendants should be barred from asking witnesses whether their memories were assisted by reviewing documents or listening

27

to recordings, or arguing that Andrews and Cui were somehow treated differently than other witnesses. The mere fact that other witnesses were truthful when they said they could not recall certain details (and then had their memories refreshed by reviewing documents or recordings) has no bearing on Andrews' and Cui's conduct or state of mind during their interviews by law enforcement.

In a recent perjury trial, Judge Kness precluded the defendant from making comparisons between the memories of other witnesses and the defendant's memory:

> Whatever somebody else as an individual may have remembered or not remembered because they may or may not have been shown documents is not relevant or not very relevant. Whatever relevance it might have is very, very low. And it seeks to draw an improper linkage from one individual to Mr. Mapes.
>
> Individuals are individuals. Some people might remember things. They might have remembered things whether they had been shown documents or not shown documents. Other individuals might be different. But those are individuals who are not the defendant. What's relevant here is what the defendant remembered at the time that he testified in front of the grand jury.

Gov. Ex. A (trial transcript in *United States v. Timothy Mapes*, 21 CR 345 at pp. 1645-1646, ruling on Dkt. 116). The Court should apply the same analysis in this case.

Said another way, suppose the government could point to another witness who deliberately lied to the FBI and ultimately admitted he was doing so. This evidence would not make it any more or less likely that Andrews or Cui intended to lie to the FBI in this case, and obviously such evidence would not be admissible if the government sought to introduce it for the purpose of proving or arguing that Andrews or Cui possessed the same intent to lie.

Accordingly, defendants should be barred under Rules 401 and 402 from seeking to elicit or improperly argue about such evidence. The evidence is also excludable under Rule 403 because evidence or arguments regarding the failure of other witnesses to recall certain details until their memories were refreshed could inappropriately be used by the jury to determine Andrews' and Cui's knowledge and intent at the time of their FBI interviews.

## VIII. GOVERNMENT MOTION *IN LIMINE* 8: MOTION TO EXCLUDE ARGUMENT OR EVIDENCE DESIGNED TO ELICIT JURY NULLIFICATION

It is improper for a defendant to suggest in any way that the jury should acquit a defendant even if it finds that the government has met its burden of proof. *See United States v. Dunkin*, 438 F.3d 778, 780 (7th Cir. 2006); *see also United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification 'is not to be positively sanctioned by instructions,' but is to be viewed as an 'aberration under our system.'"); *United States v. Laguna*, 693 F.3d 727, 731 (7th Cir. 2012) (district court properly excluded evidence regarding prior lenient treatment enjoyed by illegal reentry defendant as irrelevant and potentially inviting of nullification). Accordingly, the government requests that the Court enter an order precluding defendants from arguing that the jury should disregard the Court's instructions on the law or presenting evidence or pursuing lines of inquiry designed to invite jury nullification. Although the government cannot anticipate each form of potential jury nullification argument or evidence, the government moves to exclude the areas noted below, as well as any argument or questioning, no matter what its form, that, in effect, would "encourage a jury to acquit under any circumstances regardless of the applicable law

or proven facts." *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983) (citation omitted).

A.     **"Politics as Usual"**

An argument that concedes the conduct but simply suggests to the jury that, even if such conduct is illegal, it is proper, necessary, or simply the way of life in politics should be barred. *See, e.g., United States v. Warledo*, 557 F.2d 721, 730 (10th Cir. 1977) (affirming exclusion of evidence offered to explain the defendants' motives as irrelevant to whether their activity was "wrongful" under the Hobbs Act); *United States v. Boardman*, 419 F.2d 110, 114 (1st Cir. 1969) (affirming exclusion of evidence regarding the defendant's political beliefs because it was irrelevant to whether he acted knowingly and deliberately); *United States v. Stirling*, 571 F.2d 708, 735-36 (2d Cir. 1978) (denouncing efforts to defend a securities fraud case by implying that the charged conduct amounted to proper and routine business practice). Accordingly, defendants should be precluded from making arguments or presenting evidence regarding similar "political" acts engaged in by others or suggesting that defendants' conduct was simply part of politics or "politics as usual."

B.     **Penalties Faced by the Defendants if Convicted.**

The Seventh Circuit has stated unequivocally that "arguing punishment to a jury is taboo." *United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997), *overturned on other grounds*, 526 U.S. 813 (1999); *see also United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997) ("the practice of informing juries about the sentencing consequences of their verdicts is strongly disfavored"). Argument and evidence concerning punishment are improper because the potential penalty faced by a

defendant is irrelevant to the jury's determination of guilt or innocence. *See Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'"); *Aliwoli v. Carter*, 225 F.3d 826, 830 (7th Cir. 2000) (same); *see also* William J. Bauer Pattern Jury Instructions § 4.08 (2022). Mention of the potential penalties faced by the defendants—including possible imprisonment, restitution, or fines—would serve only the improper purpose of inviting the jury to consider the penal consequences of a conviction and, ultimately, nullification.

### C.    "Golden Rule" Arguments

The government moves to preclude defendants from making a so-called "Golden Rule" appeal, or —in other words—any argument that the jury should place itself in the defendants' shoes. For example, in *United States v. Teslim*, the prosecutor stated in his rebuttal argument: "I ask you, ladies and gentlemen, if it happened to you and you had nothing to hide[.]" 869 F.2d 316, 328 (7th Cir. 1989). The Seventh Circuit has held that such an argument "is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Id.* (quotation omitted); *see also United States v. Roman*, 492 F.3d 803, 805-06 (7th Cir. 2007) (affirming the district court's exclusion of defendant's proposed argument that the "jurors should put themselves in his shoes and consider 'There but for the grace of God go I.'"). Such argument should be excluded for this reason.

## IX. GOVERNMENT MOTION *IN LIMINE* 9: MOTION TO EXCLUDE QUESTIONS AND COMMENTS THAT INVITE THE JURY TO SPECULATE REGARDING CONTENTS OF UNPLAYED OR UNRECORDED CONVERSATIONS AND PORTIONS OF SUCH CONVERSATIONS

As part of this investigation, the government conducted Title III and consensual interceptions on phones used by Edward Burke and Daniel Solis. In addition, there are consensual recordings of certain in-person meetings involving Burke. The government will play only a fraction of the many intercepted phone calls and consensual recordings obtained during the investigation. Further, with regard to the recordings that the government will play at trial, in several cases the government plans to play only limited portions of the recordings—many of the recordings concern matters that are not pertinent to the charged offenses.

Defendants are, of course, free to seek to admit any recordings or portions of recordings that comport with the Federal Rules of Evidence. However, the Court should bar the defendants from asking questions or making comments that invite juror speculation regarding the existence or content of recordings or portions of recordings not played at trial. Such comments or questions serve no legitimate purpose—they cause the jury to focus on evidence that is not in front of them, and wrongly suggest that the government is withholding evidence favorable to the defense from the jury. *See generally Berry v. Deloney*, 28 F.3d 604, 609 (7th Cir. 1994) (holding that "district court acted within its discretion in precluding plaintiff's counsel from admitting evidence that would have merely invited the jury to speculate that [the defendant] suppressed evidence helpful to the plaintiff").

For these reasons, the government respectfully asks the Court to preclude defense counsel from making arguments and asking questions that invite the jury to speculate about unplayed recordings.

## X.   GOVERNMENT MOTION *IN LIMINE* 10: MOTION TO EXCLUDE EVIDENCE CONCERNING DEFENDANTS' PRIOR GOOD CONDUCT OR LAWFULNESS

The government moves to preclude the defendants from presenting evidence of, or making reference to, lawfulness, non-corrupt conduct, and prior good acts, except reputation or opinion evidence offered by character witnesses strictly in accord with Federal Rule of Evidence 405(a).

### A.   Applicable Law

Defendants may seek to elicit testimony and argue that, on prior occasions, they acted in a lawful manner.  Or, they may argue that because they performed good acts during their lives, they could not have committed the charged offenses. But "[e]vidence that a defendant acted lawfully on other occasions is generally inadmissible to prove he acted lawfully on the occasion alleged in the indictment." *United States v. Reese*, 666 F.3d 1007, 1020 (7th Cir. 2012); *United States v. Heidecke*, 900 F.2d 1155, 1162 (7th Cir. 1990) (same); *United States v. Burke*, 781 F.2d 1234, 1243 (7th Cir. 1985) ("[e]vidence that the defendant frequently performs lawful or laudable acts does not often establish that some subsequent act is also lawful or laudable"). Similarly, evidence of the absence of unlawful conduct on specific occasions is not proof that defendants did not commit the charged conduct. *See United States v. Scarpa,* 897 F.2d 63, 70 (2d Cir. 1990) (upholding exclusion of evidence that defendants met regularly and did not discuss criminal activity, stating "[a] defendant

may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions").

As a general rule, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Exceptions to this general rule are set forth in Rule 404(a)(2), which provides that "a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." Fed. R. Evid. 404(a)(2)(A). However, a defendant's right to admit evidence of a "pertinent trait" is not unlimited. Rather, under Rule 405, a defendant is only permitted to prove the pertinent trait "by testimony about the person's reputation or testimony in the form of an opinion." Fed. R. Evid. 405(a).

Specifically, a witness who provides testimony about a defendant's reputation regarding a particular character trait must be able to show "acquaintance with [defendant], the community in which he has lived[,]" and that he can "speak with authority of the terms in which generally [defendant] is regarded." *United States v. Bedonie*, 913 F.2d 782, 801-02 (10th Cir. 1990) (quotations omitted). If the character witness provides opinion testimony about a defendant's pertinent character trait, it must conform with Federal Rule of Evidence 701, in that it must be "rationally based on the witness's perception." Moreover, character witness testimony may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403; *United States v. Harris*, 491 F.3d 440, 447 (D.C. Cir. 2007).

If (and only if) a proper foundation is laid, character testimony should be limited to: (1) whether the witness has an opinion concerning a pertinent trait of the defendant or knows about the defendant's reputation concerning that trait; and (2) what that opinion or reputation is. *See* Fed. R. Evid. 405.[5]

In response to testimony about a particular character trait, the government may respond to such testimony in two different ways. First, the government may, if it so chooses, cross-examine the character witness about "relevant specific instances" of the defendant's conduct. Fed. R. Evid. 405(b); *United States v. Williams*, 738 F.2d 172, 176-77 n.6 (7th Cir. 1984). Second, the government may call rebuttal witnesses to testify about reputation or opinion testimony about the specific trait at issue. *See United States v. Murphy*, 768 F.2d 1518, 1535 (7th Cir. 1985).

## B. Defendants Should Be Barred From Presenting Evidence of Non-Pertinent Character Traits.

"In the criminal context, a pertinent character trait is one that is relevant to the offense charged." *United States v. John*, 309 F.3d 298, 303 (5th Cir. 2002); *see also United States v. Staggs*, 553 F.2d 1073, 1075 (7th Cir. 1977) ("[A] character trait can only be 'pertinent' if its existence is relevant to the outcome of the case."), *implicitly overruled on other grounds by United States v. Ricketts*, 146 F.3d 492, 497 (7th Cir.

---

[5] Even evidence offered under Rule 405(a) cannot include specific instances of good conduct: it is limited to a description of the subject's reputation or to a brief statement of opinion. *See* Advisory Committee Notes to Rule 405 (The rule "contemplate[s] that testimony of specific instances is not generally permissible on direct examination of an ordinary opinion witness to character . . . [O]pinion testimony on direct in these situations ought in general to correspond to reputation testimony as now given, *i.e.*, be confined to the nature and extent of observation and acquaintance upon which the opinion is based.").

1998); *United States v. Angelini*, 678 F.2d 380, 381 (5th Cir. 1980) (in Rule 404(a)(1) "pertinent is read as synonymous with relevant") (internal quotation omitted). "Relevant" evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *see also Burke*, 781 F.2d at 1243 ("Whether the prior action is laudable or unlawful should not make much difference; the question in each case is whether prior conduct makes more or less likely the existence of some fact that matters.").

Defendants may attempt to elicit testimony pertaining to defendants' good acts, government service, integrity, or sense of ethics. The government recognizes that courts have found honesty and integrity to be pertinent traits in certain situations. *See, e.g., United States v. Ahmed*, 73 F.4th 1363, 1384 (11th Cir. 2023) (fraud); *United States v. Daily*, 921 F.2d 994, 1011 (10th Cir. 1990) (conspiracy to make false statements). But a defendant cannot bootstrap testimony regarding other traits, for example, for such things like generosity to both civic causes and charity toward others, under the rubric of character evidence. Indeed, courts have held that generosity is not a pertinent trait for which character evidence is permitted under Rule 404(a)(2)(A). *See United States v. Langford*, 647 F.3d 1309, 1329 (11th Cir. 2011) (affirming exclusion of evidence of defendant's "generous and philanthropic character"); *United States v. Manfredi*, No. CRIM. 07-352, 2009 WL 3762966, at *2-6 (W.D. Pa. Nov. 9, 2009) (precluding evidence of generosity as character evidence).

36

Such traits have no relevance to whether the defendants committed the crimes charged in this case. *See generally United States v. Berry*, No. 4:06CR104-P-B, 2007 WL 324027, at *1 (N.D. Miss. Jan. 31, 2007) (commendations as a physician "bear no relevance to whether or not she committed the crimes of which she is accused since she could be the most competent, skilled physician in the world and still have committed crimes"). As a recent example, Judge Leinenweber granted a similar motion by the government to bar defendants in a public corruption trial from eliciting testimony of prior good acts. *See* Gov. Ex. B (trial transcript in *United States v. McClain et al.*, 20 CR 812, ruling on Dkt. 210).

## C. Defendants Should Be Barred from Presenting Evidence of Specific Acts.

While a defendant may elicit testimony regarding the defendant's reputation for a particular character trait or the witness's opinion regarding that trait, provided a proper foundation is laid, a defendant cannot elicit testimony about specific acts to prove the defendant's propensity to act accordingly—or under the guise of explaining the basis for, or laying the foundation for, the witness's testimony. The advisory committee note to Rule 405 explains that:

> [T]estimony of specific instances is generally not permissible on direct examination of an ordinary opinion witness to character . . . Opinion testimony on direct in th[is] situation ought in general to correspond to reputation testimony as now given, i.e., be confined to the nature and extent of the observation and acquaintance upon which the opinion is based. *See* Rule 701.

Accordingly, a defendant cannot elicit testimony about specific instances that relate to the pertinent trait. *See United States v. White*, 737 F.3d 1121, 1137 (7th Cir. 2013).

Evidence of other lawful behavior is irrelevant here, because acts of honesty or good deeds do not prove an absence of dishonest acts. *See, e.g., United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) ("Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant."); *United States v. D'Arco*, 1991 WL 264504, at *1 (N.D. Ill. Oct. 18, 1991) ("[e]vidence that defendant acted lawfully on other occasions is inadmissible to prove that he acted lawfully on the occasions alleged in the indictment").

For example, defendant Burke should not be permitted to elicit testimony or evidence that he committed good works in his 50 years as alderman, assisted his ward, or committed other lawful acts in an effort to distract the jury from the charges for which he stands trial. *See*, *e.g.*, *Scarpa*, 897 F.2d at 70 (excluding taped proof that defendants met regularly and did not discuss criminal activity). Indeed, the Advisory Committee Notes for Rule 405 state that proof of character by means of specific acts "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." Rule 405 is intended to prevent the series of wasteful "mini-trials" which would inevitably ensue if the defendant were allowed to pursue this irrelevant line of inquiry.

### D. Defendants Should Be Barred from Presenting Character Evidence Post-Dating the Charged Conduct.

A character witness's testimony must also relate to a time reasonably contemporaneous with the crimes charged. *See, e.g., United States v. Curtis*, 644 F.2d 263, 268 (3d Cir. 1981); *United States v. Gil*, 204 F.3d 1347, 1351 (11th Cir. 2000) (affirming exclusion of character witness testimony where witness did not know the

defendant at the time of the charged offense and "did not have an adequate basis for expressing an opinion as to [defendant's] character"). Accordingly, defendants should not be permitted to introduce character evidence arising after the government investigation went overt. *See, e.g., United States v. Hill*, 40 F.3d 164, 169 (7th Cir. 1994).

## XI.   GOVERNMENT MOTION *IN LIMINE* 11: MOTION TO EXCLUDE EVIDENCE OF WITNESSES' "BAD ACTS" NOT INVOLVING DISHONESTY AND TO REQUIRE NOTICE BY PARTIES

The government moves to preclude defense counsel from introducing improper impeachment evidence or improperly impeaching government witnesses during cross-examination except as permitted under Federal Rule of Evidence Rule 608(b). The government also moves to bar the parties from introducing evidence (including by asking questions on cross-examination) under Rule 608(b) except upon prior notice to the Court and the opposing party, and outside the presence of the jury.

The government has produced—and the government will continue to produce to defense counsel as necessary—documents setting forth potential impeachment material for the government's witnesses in this case. Of course, the mere fact that the government has produced to the defense a fact or an allegation does not render it admissible at trial.  Rule 608(b) provides that specific instances of past conduct may be inquired into on cross-examination if and only if they concern the witness's character for truthfulness. In addition, pursuant to Rule 608(b), except for criminal convictions under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct to attack or support the witness's character for truthfulness. *See United States v. Abair*, 746 F.3d 260, 263 (7th Cir. 2014). Indeed,

pursuant to Rule 611, cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility, and therefore examination may be barred when it is used for the sole purpose of making a general character attack. *United States v. Cameron*, 814 F.2d 403, 405 (7th Cir. 1987). Further, the probative value of cross-examination of this nature may be substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403*; see also United States v. Henderson*, 409 F.3d 1293, 1298 (11th Cir. 2005) (where a witness was alleged to have been involved in spousal abuse, such evidence posed a disproportionate risk of unfairly inflaming the jury's emotions and sidetracking the trial on an irrelevant issue). In addition to causing prejudice, cross-examination of this type may also confuse the issues or mislead the jury, as well as cause delay. Fed. R. Evid. 403.

So that the Court can make the appropriate rulings, the parties should identify the prior conduct about which they intend to cross-examine a given witness before cross-examination and demonstrate how that conduct is probative of truthfulness. This should occur outside the presence of the jury. *E.g., United States v. Barton,* No. 1:19-CR-00733, 2021 WL 3800171, at *10 (N.D. Ill. Aug. 26, 2021) (ordering the parties to "ask for a sidebar before starting a line of questioning on Rule 608(b) evidence"). This simple procedure will ensure that any alleged bad acts are not improperly communicated to the jury before the Court is able to determine whether such alleged bad acts are the subject of proper impeachment.

**XII.  GOVERNMENT MOTION *IN LIMINE* 12: MOTION TO PRECLUDE DISCOVERY REQUESTS OR COMMENTARY IN THE PRESENCE OF THE JURY**

The government moves the Court to preclude requests or comments relating to discovery in the presence of the jury. Courts in this district have determined such conduct is improper. *United States v. House*, No. 14 CR 10, 2015 WL 1058019, at *2 (N.D. Ill. Mar. 6, 2015) (citing cases). This is because such requests and comments may mislead the jury, such as by creating the impression that one side has suppressed information as a means of seeking an unfair advantage. *See, e.g., United States v. Dochee*, 18 CR 108-4, 2009 WL 102986, at *1 (N.D. Ill. Jan. 15, 2009) (granting motion *in limine* to exclude comments on discovery because "commentary on discovery matters by either party in the presence of the jury could create the impression that the opposing party is withholding information"). The requests may also be without merit in the event discovery already has been tendered or is not subject to disclosure. In addition, these requests can easily be made to the Court or counsel outside the presence of the jury with no prejudice resulting to either side.

**XIII.  GOVERNMENT MOTION *IN LIMINE* 13: MOTION TO PRECLUDE COMMENTARY REGARDING THE COURT'S EVIDENTIARY RULINGS**

If the Court excludes evidence offered by either side, the government moves for the Court to bar the parties from referring to this excluded evidence or otherwise commenting on the Court's evidentiary ruling in front of the jury. There is no legitimate reason for counsel to do so. Moreover, it is improper for counsel to comment on excluded evidence or suggest that excluded evidence would have affected the jury's analysis had only the Court admitted it. *See Solles v. Israel*, 868 F.2d 242, 245 (7th Cir. 1989) (criticizing prosecutor's "improper remarks in front of the jury including

commenting on excluded evidence"). Motions *in limine* are counsel's opportunity to argue regarding the relevancy or propriety of evidence; once the court has ruled on the relevancy and propriety of evidence, counsel may not decide for themselves that the evidence is actually admissible.

## XIV. GOVERNMENT MOTION *IN LIMINE* 14: MOTION TO EXCLUDE MISSING WITNESS ARGUMENT

It is within the Court's discretion to prohibit argument concerning missing witnesses not under the exclusive control of either side. *United States v. Sblendorio*, 830 F.2d 1382, 1394 (7th Cir. 1987). Indeed, "when the witness is equally available to both sides, the preferred practice is to preclude the [missing witness] argument rather than to leave the jury free to speculate about a lot of non-evidence." *United States v. Simpson*, 974 F.2d 845, 848 (7th Cir. 1992). In this case, the government will call some but not all witnesses with knowledge of the episodes charged in the superseding indictment. As set forth above, for example, the government may not call as witnesses at trial former Alderman Solis or Individual A-1. The defense has the ability to subpoena those witnesses and others. The government requests that the Court prohibit defendants from introducing evidence about or arguing that any inference can be drawn from the fact that additional witnesses did not testify.

If defendants wish to make any such argument or introduce any such evidence regarding missing witnesses, the government requests that the defendants notify the Court first to allow the parties to address the issue with the Court before the arguments are presented to the jury. Should defendants be allowed to present a missing witness argument, ordinarily, a prosecutor may reply to "an argument by the

defense that the absence of some witness counts against the prosecution" by pointing out that the defense has the same subpoena power as the government. *Sblendorio*, 830 F.2d at 1392. Once the subject is opened by the defense, it is permissible for the government to respond. *Id.* at 1394. As the Seventh Circuit explained, "[t]he jury is entitled to know that the defendant may compel people to testify; this legitimately affects the jury's assessment of the strategy and evidence." *Id.* at 1393-94.

In a similar vein, there are many reasons why the government chooses not to call every witness on the witness list, including that the witness may become unavailable to testify or the testimony may become cumulative as a trial progresses. A jury could become confused, or make an incorrect inference, if told that the government had originally listed a witness on their witness list who did not end up testifying. Thus, defendants should not be permitted to make any argument regarding why the government did not call every witness on its witness list.

## XV.  GOVERNMENT MOTION *IN LIMINE* 15: MOTION TO PRECLUDE ARGUMENT DEFINING REASONABLE DOUBT

The government moves to preclude counsel from attempting to define reasonable doubt during any argument presented to the jury. The Seventh Circuit has clearly and consistently held that "reasonable doubt" is a term that should not be defined by the trial court or counsel. *See, e.g., United States v. Hatfield*, 591 F.3d 945, 949 (7th Cir. 2010); *United States v. Blackburn*, 992 F.2d 666, 668 (7th Cir. 1993) (noting that definitions of reasonable doubt have a likelihood of "confus[ing] juries more than the simple words themselves"); *United States v. Bardsley*, 884 F.2d 1024, 1029 (7th Cir. 1989); *United States v. Glass*, 846 F.2d 386, 387 (7th Cir. 1988)

(explaining that "[a]ttempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury") (citations omitted); *United States v. Hall*, 854 F.2d 1036, 1039 (7th Cir. 1988) ("An attempt to define reasonable doubt presents a risk without any real benefit."); William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit (2022) at 26 (collecting cases).

In *United States v. Thompson*, 117 F.3d 1033 (7th Cir. 1997), for example, the Seventh Circuit affirmed the district court's decision to prevent defense counsel from explaining reasonable doubt to the jury. Explaining that "[t]he law is clear in this circuit that it is improper for attorneys to attempt to define the term," the Seventh Circuit noted that by preventing defense counsel's attempt to define reasonable doubt, "[r]ather than abusing its discretion, the district court heeded our express command." *Id.* at 1035; *see also United States v. Alex Janows & Co.*, 2 F.3d 716, 722-23 (7th Cir. 1993) ("It seems simple enough; we admonish counsel, do not define 'reasonable doubt' to a jury.").

## XVI. GOVERNMENT MOTION *IN LIMINE* 16: MOTION TO RECALL GOVERNMENT WITNESSES

The government respectfully requests permission from the Court to recall witnesses during the course of trial in its case-in-chief and in any rebuttal case, so that testimony can be presented to the jury in an orderly and understandable manner, and in a manner most effective for ascertaining the truth.

Federal Rule of Evidence 611(a) provides: "The Court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make those procedures effective for determining the truth." Fed. R. Evid.

611(a). Moreover, this Court has "broad discretion" to determine the mode and order of interrogation. *United States v. Bozovich*, 782 F.3d 814, 816 (7th Cir. 2015); *United States v. Vasquez*, 635 F.3d 889, 897 (7th Cir. 2011).

At issue in the trial are four separate episodes: (1) the Old Post Office project shakedown; (2) the fast-food restaurant shakedown; (3) Burke's acceptance of legal work from Cui to help with the pole sign; and (4) Burke's attempt to extort a local museum. There are certain witnesses who were involved in more than one of these incidents, including lay witnesses and law enforcement agents who were involved in more than one aspect of the investigation. The government intends to organize its trial presentation by each episode. In order to present evidence in the most comprehensible manner to the jury, the government may therefore seek to call a small number of witnesses on multiple occasions, so that they can (for example) first testify about the Post Office and then later testify about the pole sign incident.

In addition, the investigation in this case included various phases, and some law enforcement witnesses' involvement spanned multiple aspects of the investigation. The presentation of evidence will also necessarily involve numerous witnesses, recordings, and documents, many of which will require the context of testimony from other witnesses for the jury to understand their import. Thus, to present evidence in the most comprehensible manner to the jury, the government may need to recall witnesses who participated in multiple phases of the investigation at different times. Permitting a witness who had involvement in multiple episodes or multiple aspects of the case to testify only once would necessarily require the

45

government to cover a broad number of topics without essential context in a fashion that would likely confuse the jury. The recall of a witness will ensure that the trial proceeds in the most efficient, organized, and streamlined manner possible, and will aid the jurors' comprehension of the case.

Accordingly, the government respectfully requests that the Court permit it to recall certain witnesses to testify to the relevant episodes. The government further proposes that after each instance of direct examination, the defendants be permitted a full and fair cross-examination on the topics that the witness testified about during that particular portion of the trial.

## XVII. GOVERNMENT MOTION *IN LIMINE* 17: MOTION TO PRECLUDE USE OF AGENT REPORTS DURING CROSS-EXAMINATION

The government moves to preclude use of agent reports summarizing a witness's statement—including FBI FD-Form 302s—during cross-examination of that witness. To constitute a prior statement under Federal Rule of Evidence 613, a witness must have either made or adopted that statement. *United States v. Schoenborn*, 4 F.3d 1424, 1427-29 & n.3 (7th Cir. 1993). Form 302s provide summaries of witness statements; they are not verbatim transcripts nor statements that the witnesses adopted. *United States v. Adames*, 56 F.3d 737, 744 (7th Cir. 1995) (affirming district court's exclusion of FBI agent's report since the witness "testified he did not adopt the statement, did not write it and could not say that what was in it was everything he had told the agents"). Form 302s are therefore generally inadmissible for purposes of impeachment because the reports do not constitute

statements made by the witness under Rule 613. *Schoenborn*, 4 F.3d at 1427-29 & n.3; *Adames*, 56 F.3d at 744.

## CONCLUSION

For the reasons stated above, the government respectfully asks the Court to grant the government's consolidated motions *in limine*.

Respectfully submitted.

MORRIS PASQUAL
Acting United States Attorney

By:     /s/ *Sarah Streicker*
        AMARJEET BHACHU
        DIANE MacARTHUR
        SARAH STREICKER
        TIMOTHY CHAPMAN
        SUSHMA RAJU
        Assistant United States Attorneys
        219 South Dearborn Street, Fifth Floor
        Chicago, Illinois 60604
        (312) 353-5300