IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 19-CR-322 |
| v. | |
| EDWARD M. BURKE, PETER J. ANDREWS, and CHARLES CUI | Hon. Virginia Kendall<br><br>United States District Court Judge |

### Defendant Charles Cui's Motion for Mistrial and Renewed Motion for Severance

This is a political corruption trial. The government expressly represented in its pre-trial filings, in response to a motion *in limine* on the issue, that it would not elicit testimony from Ray Lang that he believed it was "corrupt" for individuals with business before the City of Chicago to hire Defendant Edward Burke's law firm for tax work. Yet at trial, the government elicited testimony from Mr. Lang when examining him on the contents of an email that this arrangement was "very corrupt." Mr. Burke moved for a mistrial, and Mr. Cui and the other co-defendant, Peter Andrews, joined that motion. Mr. Cui joins and incorporates his co-defendants' arguments. However, Mr. Cui submits this filing separately to highlight why Mr. Lang's testimony was specifically highly prejudicial to Mr. Cui and why – if a mistrial is not granted – this Court should revisit its ruling denying Mr. Cui's motion for severance.

The government was well-aware there was a line it was walking regarding Mr.

Lang's testimony. Mr. Lang, a high-ranking Amtrak employee, wrote in an email to colleagues relevant to the "Post Office" episode that the Post Office developer "hired Ed Burke today" and it was "a very old school Chicago move to hire him." Gov. Ex. 219. He then testified before the grand jury when asked about the email and specially the "old school Chicago move" statement that "I thought this was a corrupt arrangement in that Alderman Burke could profit from the arrangement and use influence to get approvals . . ." GJ_036-000018. Mr. Burke moved to limit both the introduction of the email and any testimony that an arrangement where Mr. Burke was hired by a developer was "corrupt." *See* Dkt. No 247 at 20-21, 40. In response, the government represented that they were only introducing the email to show the effect on the listener—that Amtrak executives were aware that the Post Office developer "had enlisted a powerful advocate in Burke to push for its interests." Dkt. No. 286 at 26. And, that the motion was "moot" regarding Mr. Lang's testimony he thought the arrangement was "corrupt" because "the government **does not** intend to elicit testimony from this witness that Burke's arrangement was 'corrupt.'" Dkt. No. 286 at 58 (emphasis added). In other words, the government was well aware that it had to tread carefully regarding the meaning of the "old school Chicago" statement when examining Mr. Lang and that it would be improper and prejudicial to elicit from Mr. Lang testimony that what he meant when he made that statement was that the arrangement was "corrupt." After all, the government voluntarily represented it would limit the testimony on that subject without need for this Court's ruling on the motion.

Yet, at trial—before the jury—the government asked Mr. Lang not one but two questions about what he meant when he wrote "old school Chicago," including a second open-ended question that could result in no other answer than eliciting testimony that Mr. Lang thought this arrangement was corrupt. An answer the government knew Mr. Lang would offer, given the grand jury testimony and the briefing highlighting the issue. When Mr. Lang was first asked about the statement in the email, he testified that he meant: a developer hiring an alderman to do property tax work, I thought, was symbolic of the Chicago way of doing business. But the government was not satisfied with this answer—which already had gone beyond the government's representation it was just using the email to show Amtrak knew the Post Office developers had powerful allies pushing their interests. *See* Dkt. No. 286 at 26. Throughout trial, the government has been asking leading questions during direct examination, yet here, when the government knew it had to tread carefully, the government asked a second, follow up question to Mr. Lang regarding the "Chicago way" testimony: "What do you mean by that?" This second question was indisputably a violation of the government's express representation in its pre-trial briefing that it would not seek to elicit testimony that Mr. Lang thought these arrangements were corrupt.

The testimony from a high-ranking, reputable Amtrak executive that he believes developers with city business hiring Mr. Burke's law firm is "very corrupt," is especially prejudicial to Mr. Cui. Mr. Cui is a developer with business before the city who hired Mr. Burke's law firm. The charges against Mr. Cui relate to his

retention of Mr. Burke's law firm. Yet, in a supposedly unrelated RICO episode (Mr. Cui has not been charged in the Post Office episode, which is the episode during which Mr. Lang's testimony was elicited), Mr. Cui has now had a reputable witness label his actions in hiring Mr. Burke as "very corrupt." This testimony would be prejudicial and warrant a mistrial regardless of whether it related to an incident involving Mr. Cui—but given this testimony directly indicts Mr. Cui, yet was elicited regarding events he was not at all involved with, is all the more prejudicial to Mr. Cui.

The government and this Court have maintained that the separate RICO episodes would be "siloed" and not result in prejudicial spillover evidence, and on that basis denied Mr. Cui's motions for severance. Mr. Lang's testimony, however, is Mr. Cui's fear about prejudicial spillover evidence brought to life in technicolor. In an effort to try keep these episodes "siloed" and not ask questions that raise unnecessary questions or inferences in the jury's mind about whether Mr. Cui is actually connected to the unrelated episodes, Mr. Cui's counsel has not even been cross-examining the witnesses in the unrelated episodes. If this Court does not grant a mistrial, or in the alternative sever the counts against Mr. Cui, then he will be put to the choice of having his counsel cross-examine Mr. Lang—potentially raising undue inferences in the jury's mind—or leaving highly prejudicial testimony unaddressed. There is double danger for Mr. Cui if his counsel asks questions: (1) questioning may create cross-contamination for the jury between the narratives in which Mr. Cui was not charged with the episode in which he was charged; and (2) questioning may further draw parallels in the jury's mind between Mr. Lang calling the Post Office developers

allegedly hiring Mr. Burke "very corrupt" and Mr. Cui, who is a developer, hiring Mr. Burke.

A curative instruction from this Court would not be sufficient to mitigate the prejudice against Mr. Cui in these circumstances—a mistrial or severance is necessary. An instruction to disregard evidence is not sufficient to cure prejudice where there "is an 'overwhelming probability' that the jury will be unable to follow the court's instructions and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." *United States v. Soria*, 965 F.2d 436, 441 (7th Cir. 1992) (citing *Greer v. Miller*, 483 U.S. 756, 766 n. 8 (1987)). Here, an instruction to disregard Mr. Lang's "very corrupt" testimony would be further prejudicial to Mr. Cui—the testimony alone is devasting in labeling near identical behavior by Mr. Cui to be "very corrupt"—especially as this Court has already previously had to instruct the jury on the issue. All an instruction would do is further call attention to the parallels between Mr. Cui's facts and the factual predicate for the improper testimony, resulting in the jury likely being unable to follow the instruction.

Courts routinely grant mistrials in these circumstances, especially when trials are in the early stages, where the government elicits prejudicial testimony it knows is improper. *See, e.g.*, *United States v. Gilmore*, 454 F.3d 725, 728 (7th Cir. 2006) ("after considering the arguments, the district judge granted the motion for a mistrial, reasoning that the trial was at a very early stage and she could not be sure how prejudicial the information might be to the defendant"); *United States v. Dugue*, 690 F.3d 636, 636–37 (5th Cir. 2012) (noting grant of mistrial where "[n]ear the conclusion

of his trial, the prosecutor violated two pre-trial rulings on motions in limine that prohibited her from mentioning the case"); *United States v. Nichols*, 977 F.2d 972, 973 (5th Cir. 1992) ("Counsel for appellant objected to this testimony as violating his motion in limine, and the court, after colloquy with the government, apparently accepted defense counsel's charge that this evidence was highly prejudicial and irrelevant and declared a mistrial."). Defendants were entitled to rely on the government's representation in the pre-trial briefing on the motion in limine, that it "does not intend to elicit testimony from [Mr. Lang] that Burke's arrangement was 'corrupt.'" Dkt. No. 286 at 58. The government was aware of Mr. Lang's grand jury testimony and yet it still went one question too far, asking an open-ended follow up for which the answer would only be that Mr. Lang believed these arrangements were corrupt. There was simply no reason for the government to ask this question, especially given its pre-trial representations.

If this Court is not inclined to grant a mistrial, in the alternative, it should sever the charges against Mr. Cui. As discussed above, this testimony is prejudicial to Mr. Cui in unique ways from his co-defendants, which would only be exacerbated by an instruction from this Court drawing further attention to the issue. The case is still early on: no evidence against Mr. Cui has yet been admitted and the Company C/Pole Sign episode has not yet been tried. This Court could cleanly sever the charges against Mr. Cui with no prejudice to the government, while simultaneously curing the prejudice to Mr. Cui resulting from Mr. Lang's testimony. Rule 14(a) is still available to this Court if it wishes a more targeted approached to cure the prejudice

to Mr. Cui and address the uniquely prejudicial ways this testimony impacts Mr. Cui as opposed to his co-defendants.

For the foregoing reasons, Mr. Cui moves for a mistrial and, in the alternative, renews his motion to sever the charges against him.

Dated:  November 30, 2023              Respectfully submitted,


                                       By: */s/ Tinos Diamantatos*

                                       Tinos Diamantatos
                                       Megan R. Braden
                                       MORGAN, LEWIS & BOCKIUS LLP
                                       110 North Wacker Drive
                                       Chicago, IL  60606-1511
                                       Telephone: +1.312.324.1000
                                       Facsimile: +1.312.324.1001
                                       tinos.diamantatos@morganlewis.com
                                       megan.braden@morganlewis.com

                                       *Counsel for Defendant Charles Cui*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed on November 30, 2023, using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Tinos Diamantatos*

Tinos Diamantatos