**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

UNITED STATES OF AMERICA

v.

EDWARD M. BURKE,
PETER J. ANDREWS, and
CHARLES CUI

Case No. 19-CR-322

Hon. Virginia M. Kendall

United States District Court Judge

**DEFENDANT CHARLES CUI'S RULE 29 MOTION FOR ACQUITTAL**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.    THE GOVERNMENT FAILED TO SUBMIT SUFFICIENT INFORMATION
TO SUPPORT COUNT TWELVE (VIOLATIONS OF 18 U.S.C. § 666) OF THE
SUPERSEDING INDICTMENT ................................................................................ 3

    A.    The government has not introduced evidence sufficient to show that the
retention of Mr. Burke's law firm was not bona fide; thus Mr. Cui must be
acquitted pursuant to Section 666(c) ........................................................ 4

    B.    The government has not produced sufficient evidence to sustain a
conviction under Section 666(a)(2). ......................................................... 5

        1.    There is no evidence that Mr. Cui retained Mr. Burke's firm
"corruptly" with the knowledge that doing so was forbidden. ................. 6

        2.    There is no evidence Mr. Cui retained Mr. Burke's firm and that
Mr. Burke agreed to the representation in exchange for assistance
with the pole sign permit or TIF funds. ................................................... 7

            a.    There is no evidence that Mr. Cui and Mr. Burke ever
discussed the release of the TIF funds. ......................................... 8

            b.    There is no evidence that Mr. Burke agreed to help Mr. Cui
with the pole sign permit in exchange for retaining his firm. ........ 9

II.    THE GOVERNMENT FAILED TO SUBMIT SUFFICIENT EVIDENCE TO
SUPPORT COUNTS THIRTEEN, FOURTEEN, AND FIFTEEN
(VIOLATIONS OF 18 U.S.C. § 1952(A)(3)) OF THE SUPERSEDING
INDICTMENT .......................................................................................................... 14

III.    THE GOVERNMENT FAILED TO SUBMIT SUFFICIENT EVIDENCE TO
SUPPORT COUNT SEVENTEEN (VIOLATIONS OF 18 U.S.C. § 1001(A)(2))
OF THE SUPERSEDING INDICTMENT .............................................................. 17

CONCLUSION ................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Perrin v. United States*,
    444 U.S. 37 (1979).................................................................................14

*United States v. Garcia*,
    919 F.3d 489 (7th Cir. 2019) .........................................................2, 3

*United States v. Hamilton*,
    46 F.4th 389 (5th Cir. 2022) ...............................................................3

*United States v. Jones*,
    713 F.3d 336 (7th Cir. 2013) ..............................................................2

*United States v. Snyder*,
    71 F.4th 555 (2023).................................................................3, 4, 6, 8

*In re Winship*,
    397 U.S. 358 (1970)..............................................................................2

**Statutes**

720 ILCS 5/29A-1 ......................................................................................16

720 ILCS 5/29A-2 ......................................................................................16

720 ILCS 5/33-1 .........................................................................................16

720 ILCS 5/33-3(a)(4) ................................................................................16

18 U.S.C. 1952(a)(3) and (b) ....................................................................16

18 U.S.C. § 666 ................................................................................. *passim*

18 U.S.C. § 666(a)(2).........................................................................3, 4, 6, 7

18 U.S.C. § 666(c) ..............................................................................4, 5, 6

18 U.S.C. § 1001(a)(2).............................................................................17, 18

18 U.S.C. § 1952 ....................................................................................14, 15

18 U.S.C. § 1952(a) ...................................................................................14

18 U.S.C. § 1952(a)(3)............................................................................14, 15

18 U.S.C. § 1952(a)(3)(A) ..................................................................................15

18 U.S.C. § 1952(b)(2) .......................................................................................15

Chicago Ethics Ordinance...................................................................................16

Travel Act ................................................................................................1, 14, 15

**Other Authorities**

Federal Rule of Criminal Procedure 29 ...................................................... *passim*

Federal Rule of Criminal Procedure 29(a).............................................................2

Local Rule 7.1 .........................................................................................................1

Rule 50................................................................................................................2, 3

Rule 56....................................................................................................................2

Rule 403..................................................................................................................7

Rule 404..................................................................................................................7

Rule 404(b)..............................................................................................................7

## <u>INTRODUCTION</u>

Mr. Cui is entitled to acquittal of the charges against him under Federal Rule of Criminal Procedure 29 because the government has failed to present sufficient evidence to sustain a conviction on any count in the Superseding Indictment.[1]  The government has charged Mr. Cui with bribing Mr. Burke by retaining his law firm to assist with a tax appeal in exchange for assistance with obtaining the release of TIF funds or a permit for a pole sign from the City of Chicago.

There was simply no evidence by which a rational jury could find sufficient evidence to convict on the bribery counts: there is no evidence that Mr. Cui ever discussed the release of TIF funds with Mr. Burke; there was no evidence Mr. Cui got relief on the pole sign; no evidence that Mr. Burke (or Klafter & Burke) received money or anything else of value from Mr. Cui; and no evidence that *any* City of Chicago employee felt improper pressure from Mr. Burke when contacted by him or his staff about the pole sign permit.  Klafter & Burke was retained at a market-standard contingency rate and performed bona fide work on the tax appeal.  Mr. Burke was permitted under the law to have a law firm that handled such tax appeals.

The Travel Act bribery counts, among other reasons addressed below, require acquittal for the simple reason that **the government did not introduce evidence at trial of the required interstate nexus**.  Nor was there any evidence that could sustain the false statement count: the evidence shows that the government's witnesses could not identify any misleading statement.

Although the standard is high to obtain a Rule 29 acquittal, the paucity of the government's evidence as to Mr. Cui, as well as the weakness of the any evidence that does exist, warrants such a result here.

---

[1] Mr. Cui moves instanter for permission to file his Motion which exceeds the fifteen-page limit permitted by Local Rules.  *See* Local Rule 7.1  Mr. Cui's motion addresses several factual and legal issues raised by the Government's case-in-chief, and Mr. Cui requires more that fifteen pages to fully address those issues.

**ARGUMENT**

The Due Process Clause protects a defendant from conviction except upon proof "beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970) (emphasis added). Federal Rule of Criminal Procedure 29(a) states in relevant part that: "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction." Fed. R. Crim P. 29(a).

The key inquiry is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Jones*, 713 F.3d 336, 340 (7th Cir. 2013). Although this Court "view[s] in the light most favorable to the government," ultimately "the height of the hurdle [to obtain an acquittal] depends directly on the strength of the government's evidence." *Id.* at 339-40; *see also United States v. Garcia*, 919 F.3d 489, 496 (7th Cir. 2019) (reiterating that while a high bar, the hurdle is not insurmountable).

"Each element of the offense" must be supported by evidence proving it "beyond a reasonable doubt." *Jones*, 713 F.3d at 340. In so evaluating the government's case, this Court must "distinguish between reasonable inferences and speculation." *Id.* "Each step in the inferential chain must be supported by evidence that allows the jury to draw reasonable inferences from basic facts to ultimate facts." *Id.*

The Seventh Circuit has analogized a Rule 29 motion to Rule 50 and 56 motions in the civil context. *Garcia*, 919 F.3d at 497. Drawing from what cases on these comparable motions in the civil context instruct, a judge should not permit a case to go to the jury where the evidence is of an "'insufficient caliber or quantity to allow a rational finder of fact to find' liability under the applicable standard of proof." *Id.* (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

254, (1986)). This Court is "responsible for enforcing outer limits on reasonable inferences" that can be drawn from the evidence and should not send the case to jury if the government's evidence would be insufficient to support any element of the offense, just as it would treat a civil Rule 50 motion. *Garcia*, 919 F.3d at 497. Therefore, in a criminal case, an acquittal should be granted under Rule 29 where the government's evidence is insufficient to support each element of the offense beyond a reasonable doubt.[2]

## I.  The Government failed to submit sufficient information to support Count Twelve (violations of 18 U.S.C. § 666) of the Superseding Indictment.

Mr. Cui generally objects that the government has not met its evidentiary burden on Count Twelve.

Mr. Cui incorporates and renews his arguments from prior filings that to convict him of violations of the federal programs bribery statute, 18 U.S.C. § 666, the Government had to prove a quid pro quo at least under a bribery theory.[3] *Compare United States v. Hamilton*, 46 F.4th 389 (5th Cir. 2022) (requiring a quid pro quo under both bribery and gratuity theory) *with United States v. Snyder*, 71 F.4th 555 (2023).[4] But regardless of whether a quid pro quo must be proven under Section 666, the government has not introduced sufficient evidence to sustain a conviction.

Section 666(a)(2) provides that "whoever . . . corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any

---

[2] The below are offered as examples of how the government failed to meet its burden on each of the counts and is not intended to be the exclusive grounds on which Mr. Cui challenges the government's failure to meet its evidentiary burden.

[3] *See* Dkt. No 375 (explaining that Section 666 requires proving quid pro quo and the jury should be instructed as such). Mr. Cui also incorporates and renews his arguments regarding the meaning of the word "corruptly" in Section 666(a)(2).

[4] Even under *Snyder* a bribery theory of the case would require proving a quid pro quo for a Section 666 conviction. *See* 71 F.4d at 579 ("A bribe requires a quid pro quo—an agreement to exchange this for that, to exchange money or something else of value for influence in the future.").

business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more." 18 U.S.C. § 666(a)(2). However, "[t]his section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business." 18 U.S.C. § 666(c).[5] The evidence is insufficient to show that Mr. Cui violated Section 666.

**A. The government has not introduced evidence sufficient to show that the retention of Mr. Burke's law firm was not bona fide; thus Mr. Cui must be acquitted pursuant to Section 666(c).**

The evidence shows that the retention of Klafter & Burke was bona fida. *See* 18 U.S.C. § 666(c). Mr. Burke in addition to being a Chicago alderman, is a lawyer and he has a law firm that handles tax appeals. Tr. 2056:18-19. The government's FBI case agent testified, and its own expert agreed, that this was permitted under local and state ethics laws and regulations. Tr. 2080:4-24.

The evidence shows that Mr. Cui hired Klafter & Burke through a lawful commercial business transaction, on ordinary terms for market-rate compensation for work actually performed. Tr. 2118:3-22 (Q: Okay. And that was a contingency fee agreement with a real law firm, correct? A: Yes. Q: To do real legal work? A: Yes. Q: For a contingency fee arrangement, right? A: Yes.); *see also* Tr. 2117:4-8; Tr. 3810:5-7, 3826:2-11 (Klafter & Burke docketed a tax appeal for Mr. Cui); Stipulation 16 (explaining contingency fee arrangements in industry for tax appeals); Tr. 3818:22-3819:7 (same). Klafter & Burke took Mr. Cui's tax appeal on a contingency basis and litigated the appeal. Tr. 2034:18-1035:11 (discussing the contingency fee agreement). This was not a sham transaction and the government produced no evidence that terms for the engagement for Mr. Cui's retention of Klafter & Burke deviated in any way from

---

[5] Mr. Cui incorporates and preserves his arguments from the motion to dismiss regarding the proper interpretation of Section 666(c) and why the indictment should have been dismissed as a matter of law. *See* Dkt. No. 88, 89, 153.

the firm's ordinary terms of engagement.  *See* Tr. 2122:20-24 ("Q: I know you indicated that you don't know the result of the property tax appeal work, but you are aware that Klafter & Burke did, in fact, perform property tax appeal work for my client in 2018, correct? A: I believe so."); Tr. 2036:17-2039:15 (setting forth the terms of the contingency fee agreement based on success in reducing tax liability).  This was not a bribe—Mr. Burke's firm only received funds if they did bona fide work for the appeal and were successful in reducing the tax liability, otherwise the agreement states that "[i]n the event no reduction is obtained, there will be no charge for services to client by attorney."  Tr. 2039:14-15; Tr. 2070:1-25.  And in fact, Mr. Burke's firm received no funds because there was no reduction in value.  Tr. 3827:13-18; Tr. 3827:24-3828:2; Tr. 3832:15-21.

Therefore, even viewed in the light most favorable to the government, because the evidence shows that the retention of Klafter & Burke was bona fide and lawfully permissible, under Section 666(c) a conviction cannot lie against Mr. Cui.  No rational jury could find this was a bribe beyond a reasonable doubt where the firm's retention was pursuant to standard terms of engagement and where Mr. Burke's firm did not receive anything of value unless it did bona fide legal work and was ultimately successful.[6]  Because the evidence clearly establishes that Section 666(c) applies, any conviction under Section 666(a)(2) is foreclosed.

### B.  The government has not produced sufficient evidence to sustain a conviction under Section 666(a)(2).

Nor has the government introduced sufficient evidence to prove that (1) Mr. Cui "corruptly" gave Mr. Burke anything of value or (2) that he did so with the "intent to influence"

---

[6] The evidence shows that if they were not successful (as happened here), Mr. Burke and his firm actually lost something of value by taking Mr. Cui as a client because they expended resources doing bona fide work and in turn received no compensation.

or reward Mr. Burke in connection with any business of the government or agency over $5,000. 18 U.S.C. § 666(a)(2).

### 1.  There is no evidence that Mr. Cui retained Mr. Burke's firm "corruptly" with the knowledge that doing so was forbidden.

The government has not introduced any evidence that Mr. Cui knew retaining Mr. Burke to handle the tax appeal was wrongful under the "corrupt" element of the offense. The Seventh Circuit has explained that the word "corrupt" in Section 666 is a *mens rea* requirement: Section 666 requires "that the reward [or bribe] be paid or received 'corruptly,' i.e., with the knowledge that giving or receiving the reward is forbidden." *Snyder*, 71 F.4th at 580. There has been no evidence that would establish that Mr. Cui knew retaining Mr. Burke's law firm was "forbidden." Nor could such an inference be drawn from the circumstantial evidence, given that the Chicago ethics ordinances specifically permitted alderman to have outside employment, including law practices, and Mr. Burke had a bona fide law firm that routinely handled tax appeals.

The email between Mr. Cui and Mr. Chin on August 23, where Mr. Cui states that perhaps Mr. Burke's lack of response to representing him in the pole sign matter is because, "[m]aybe he thinks there's a conflict of interest," Tr. 2023:12-15, does not provide any basis to conclude Mr. Cui's knew his retention of Mr. Burke's firm to handle the tax appeal was forbidden. Even viewing this in the light most favorable to government, at most this shows that Mr. Cui thought Mr. Burke might not be able to do the pole sign representation due to some conflict, not that Mr. Cui knew it would be unlawful to retain the firm. The evidence also shows that Mr. Cui openly retained Mr. Burke's firm to handle the tax appeal, including documenting the retention in emails and telling his current attorney that he intended to do so. Gov. Exhibit 273; Tr. 3806:16-3807:3. Given Mr. Burke had a tax appeal law firm and was regularly retained

to do tax appeals, there can be no reasonable inference from this email that Mr. Cui believed that retaining Mr. Burke's law firm for a tax appeal was in any way forbidden.

Nor does any evidence about a doctored photo or actions by Mr. Cui's zoning lawyer, Thomas Moore, indicate any corrupt intent in the retention of Mr. Burke's law firm. There is no connection between that evidence and Mr. Burke's actions or any evidence he knew anything about Mr. Moore or any photo.[7]

> **2.** **There is no evidence Mr. Cui retained Mr. Burke's firm and that Mr. Burke agreed to the representation in exchange for assistance with the pole sign permit or TIF funds.**

The government cannot show there was any quid pro quo (an agreement to exchange this for that) or even intent to influence by Mr. Cui,[8] as is required for a bribery-based conviction under Section 666. Nor is there any evidence to support a gratuity-based theory of Section 666.

---

[7] This evidence of an allegedly doctored photo or Mr. Moore and Mr. Cui's alleged actions are also not of relevance to the bribery inquiry under Section 666(a)(2) addressed below either. Although there may be temporal overlap between when Mr. Burke may have taken certain actions and when Mr. Moore was retained and a doctored photo submitted, *see* Tr. 2154:5-25, there was no evidence introduced showing that Mr. Burke was aware of a doctored photo or any interactions (improper or otherwise) that Mr. Moore had with Ms. Frydland and Mr. Beaudet in September 2017. *See* Tr. 3511:3-3536:19 (Mr. Burke plays no role in these events); Tr. 3564:13-3567:25; Tr. 3603:10-3611:5 (showing at most Mr. Cui forwarded an email to Mr. Burke with the photo at issue on September 7 after the contingency agreement was signed on September 5, but there was no communication to Mr. Burke about it being doctored); Tr. 3647:9-3662:13 (issue of doctored photo raised to Mr. Moore); Tr. 3756:1-3778:19 (Mr. Beaudet does not mention Mr. Burke on his direct); Tr. 3781:1-9 (no correspondence with Mr. Burke and no photos of signs sent to Mr. Burke).

For this reason, Mr. Cui objected before trial that the doctored photo and Mr. Moore's submission of the photo was improper, undisclosed Rule 404(b) evidence. Mr. Cui now respectfully renews his objection that this evidence was improperly admitted under Rules 403 and 404, and prejudiced him by allowing the government to introduce unrelated "bad" acts to try to taint the jury against him. As admitted and used in trial, the government failed to establish any connection between this evidence and anything related to Mr. Burke, and mere temporal coincidence does not make it relevant. This was particularly prejudicial given that testimony about the doctored photo makes up a large portion of the total evidence the government admitted as to Mr. Cui, heightening the danger that this evidence will improperly inflame and prejudice the jury given the outsized role it played in this case. Three of the governments seven witnesses related to the doctored photo. This prejudice cannot be cured through a limiting instruction as that would only further emphasize the improper evidence and result in further prejudice.

[8] Mr. Cui does not concede that a Section 666 conviction for bribery can be maintained by a mere showing of intent to influence, as opposed to requiring a quid pro quo. *See Snyder*, 71 F.4d at 579. But even this lesser showing cannot be made on this evidence by a reasonable jury.

### a. There is no evidence that Mr. Cui and Mr. Burke ever discussed the release of the TIF funds.

As charged in the Superseding Indictment, Count 12 is focused on the theory that Mr. Cui retained in August and then signed a contingency agreement on September 5, 2017 with Mr. Burke's law firm as a bribe to get him to disburse TIF funds. *See* Dkt. No. 30 at 50-51.

But the government has not shown that receipt of the TIF is evidence that can support a conviction beyond a reasonable doubt under Section 666. Mr. Cui had already received the TIF from the city months before there was any discussion, meeting, or hiring of Mr. Burke's law firm. Tr. 2086:23-2087:1 (Q: "There's no evidence that my client had any meetings or discussions or hiring Mr. Burke's firm in March of 2016 [when TIF was granted], correct?; A: Not that I'm aware of."). And there was no evidence whatsoever that Mr. Cui and Mr. Burke ever met about or otherwise discussed the disbursement of TIF funds or that Mr. Cui had not yet received the TIF funds—be it on August 24 when Mr. Cui retained Klafter & Burke, August 30 when Mr. Cui provided Mr. Burke's firm the factual basis for his tax appeal, September 5 when the contingency agreement for the representation was executed, or even at any other time—that has been introduced, such that there is any evidence by which a jury could find that Mr. Cui bribed Mr. Burke to assist with the TIF funds.[9] No TIF funds were ever dispersed to Mr. Cui.[10]

---

[9] For this reason, the reference in the August 24 email to Mr. Reveliotis to needing Mr. Burke's favor for TIF money is not evidence from which a jury can draw any inferences in favor of the government. Tr. 3806:16-3807:3. There is no evidence Mr. Burke was aware of the content of the email or that Mr. Cui had any issues with TIF money. Tr. 3811:8-19. Moreover, the evidence shows the government failed to establish that Mr. Cui received the TIF funds (he did not). Tr. 2088:4-11.

[10] A gratuity theory for Section 666 regarding the TIF is not supported by the evidence because there is no evidence that Mr. Burke was even aware of that Mr. Cui had received a TIF or that the funds had not less been dispersed, much less evidence that Mr. Burke took some action regarding the TIF funds and that Mr. Cui hired him as a reward. Despite chairing the Finance Committee, there is no evidence that Mr. Burke connected the TIF granted in March 2017 to Mr. Cui, "that Chinese guy, Ray Chin's friend" who was seeking legal representation. Tr. 2063: 13-2065:16. All the government's evidence showed is that when Mr. Cui emailed Mr. Burke on August 24 about the tax appeal representation, three of the nine PINs listed matched the TIF redevelopment agreement. Tr. 2024: 16-21. There is no evidence by which a rational jury could reasonably infer that Mr. Burke had any knowledge that these PINs aligned to properties subject to an existing TIF agreement. Likewise, the email Mr. Cui sent Mr. Keening at

The evidence, even viewed in the light most favorable to the government, does not support a quid pro quo or any intent to influence whereby Mr. Cui retained Mr. Burke's firm in exchange for assistance with receipt of the TIF funds.

> **b.      There is no evidence that Mr. Burke agreed to help Mr. Cui with the pole sign permit in exchange for retaining his firm.**

Perhaps realizing the weakness of the TIF theory in Count 12, the government's theory of the case as has been presented at trial focuses instead on the "permit" (referred to with only one word at the end of Count 12).  This theory appears to be that Mr. Cui retained Klafter & Burke on August 24, 2017 to represent him in a tax appeal as bribe to get Mr. Burke to help him with a permitting problem for a pole sign at a property he owned in Chicago.  *See* Tr. 2023-2024 (introducing the August 24, 2017 emails).

But the evidence does not support this theory either.  The evidence shows that two days later, on August 26, 2017,  Mr. Cui emailed Mr. Burke asking if he could also retain Klafter & Burke to assist with the pole sign issue.  Tr. 2117:21-2118:2; *see also* Tr. 2023:13-21 (discussing August 28 email from Mr. Cui to Mr. Chin reading: "Ray, he hasn't responded to my request for pole sign representation.  Can you talk to him about this.").  If Mr. Cui had bribed Mr. Burke on the 24th—by asking Mr. Burke's firm to represent him in the tax appeal—to assist with his pole sign permitting problems, there would have no need to retain Mr. Burke's firm to handle the pole sign matter.  Nor would there be a need for Mr. Cui to continue to email a mutual acquaintance of both him and Mr. Burke, Raymond Chin, about hiring Mr. Burke's law firm for legal help with the pole sign issue after August 24.  Tr. 2023:13-21.  This shows that Mr. Cui did not have a guilty mind where he thought he had just bribed Mr. Burke corruptly by seeking tax appeal representation on August 24—he was seeking to retain Mr. Burke's law firm to still assist him

---

Klafter & Burke on August 30 discussed plans to redevelop the properties but does not state there was a TIF agreement in place.  Tr. 2032:1-2034:1.

with the pole sign issue. Moreover, after not receiving a response from Mr. Burke as to representation related to the pole sign, Mr. Cui reached out to his zoning lawyer Thomas Moore on September 1, 2017 for assistance with the pole sign issue, Tr. 3633:23-3635:5, which was after August 24, further showing that Mr. Cui did not believe he had just bribed Mr. Burke to handle the issue.[11]

That no bribe occurred is supported by the evidence of how the pole sign narrative was resolved. Mr. Cui never received a pole sign permit and the pole sign was removed a month after Mr. Cui hired Mr. Burke's law firm. Tr. 2120:8-10 ("Q: After September of 2017, isn't it true that the pole sign itself was taken down? A: Yes."). Instead, the evidence shows the issue was otherwise resolved with the tenant.

Nor does the email from Mr. Cui to George Reveliotis on August 24 provide a sufficient basis for the jury to find that the retention of Mr. Burke's law firm was a bribe. Tr. 3806:16-3807:3. Even interpreting the email in the light most favorable to the government, there is no evidence that Mr. Burke had any knowledge of the contents of that email. Tr. 3811:8-19. There is no evidence that Mr. Burke had any knowledge of Mr. Cui's state of mind or knew anything other than that Mr. Cui wanted to hire him to do a tax appeal and represent him in a legal matter involving a pole sign permit—that email only went to Mr. Reveliotis and there is no evidence that Mr. Reveliotis shared that email with Mr. Burke.[12] There is no evidence that Mr. Cui ever asked Mr. Burke for anything other than legal representation.

---

[11] Moreover, the FBI's interview with Mr. Cui contains a denial from Mr. Cui when the FBI asked him if he offered ""If you help me with the sign, I'll give you my property tax appeal work." Tr. 3936:22-3937:5, 15-17.

[12] The timing sequence of Mr. Cui emailing Mr. Reveliotis on August 24 informing him he will ask Mr. Burke to represent him in the tax appeal that year, getting an email from Mr. Reveliotis on August 24 saying "Of course, Charles, I understand," and then Mr. Cui emailing Mr. Burke on the 24th further shows there was no corrupt intent in Mr. Cui's state of mind. *See* Tr. 3806:16-3807:3; Tr. 3820:20-3822:23 (August 24 12:03 email Mr. Cui to Mr. Reveliotis); Tr. 3808:22-3809:3 (12:06 p.m. email from Mr. Reveliotis to Mr. Cui); Tr. 2023:24-2024:15 (12:17 p.m. email from Mr. Cui to Mr. Burke). He only emailed Mr. Burke after Mr. Reveliotis signed off and Mr. Reveliotis—who was his attorney—expressed no concerns with Mr. Cui doing so.

Nor is there any direct or circumstantial evidence that anyone else ever made a request on behalf of Mr. Cui for Mr. Burke to intervene on Mr. Cui's behalf about the pole sign issue.[13] The communications from Mr. Chin to Mr. Burke show only that Mr. Chin informed Mr. Burke that Mr. Cui wished to retain him for legal work. Tr. 2057:5-9 ("Real, real quick, the guy that I brought to introduce you to, he's been trying to get a hold of you to get some, get some tax work and apparently some legal[.]"). And given the government was recording Mr. Burke's calls and emails, the government would have had evidence that Mr. Chin or anyone else made such a request, it must be presumed such evidence does not exist.

Moreover, city employees testified that when Mr. Burke reached out to inquire about Mr. Cui's pole sign issue, they did not feel there was any pressure, improper or otherwise, that Mr. Burke was exerting about the matter.[14] See Tr. 3507:4-3510:9 (stating Ms. Frydland was happy to look into it because "economic development is important"), Tr. 3542:3-3543:19 (no pressure, nothing unusual about request, did not ask to do anything other than look into); Tr. 3547:2-22 (same); Tr. 3726:13-3728:18 (Ms. Scudiero[15] testify Mr. Burke just asked her to look into and not to take any particular action); Tr. 3737:23-3728:7; Tr. 3744:18-21 (no pressure); Tr. 3780:16-3781:9 (Mr. Baudet testifying no discussion Mr. Burke and no pressure) Tr. 3784:18-3785:2 (same).

---

[13] Nor would a conviction be permissible based on such evidence given that there is no conspiracy charge.

[14] The evidence establishes after this initial call from Mr. Burke, the communication about the issue was with Mr. Cui or his other attorney handling the matter, Thomas Moore. 3511:20-3513:1 (the attorney Mr. Cui disclosed to Ms. Fryland for the matter was Thomas Moore); Tr. 3536:20-3527:1 (no follow up by Mr. Burke and Ms. Frydland cannot remember any follow up conversation with his staff); *see also* Tr. 3511:3-3536:19; Tr. 3552:8-24; Tr. 3552:21-3555:18. There was a request by Mr. Burke's office on September 13 to call them about the 4901 West Irving Park property, but that call was not returned. Tr.3538:2-23.

[15] The government did not establish the date on which Mr. Burke or a staff member called Ms. Scuderio, but the evidence that was admitted shows it likely came on or after September 14 based on a conversation between Mr. Burke and his assistant. *See* Tr. 3539:23-3540:10.

Even viewed in the light most favorable to government, the mere fact that Mr. Burke reached out or had a staff member reach out to other city employees (even given any proximity to Mr. Cui's retention of Klafter & Burke on August 24 for the tax appeal) does not show there was any bribe, and specifically it does not show there was a quid pro quo. There is no evidence that Mr. Burke agreed to reach out to city officials about the pole sign matter in exchange for Mr. Cui retaining Mr. Burke's firm to handle the tax appeal. Although Mr. Cui contacted Mr. Burke several times about whether he would represent Mr. Cui in the pole sign matter, the evidence shows that any communication from Mr. Burke or the other lawyers at his firm to Mr. Cui concerned the tax appeal. *See* Tr. 2026:7-21 (August 25 email from Mr. Burke to Mr. Cui with the subject line "Regarding tax appeal case."); Tr. 2030:11-2031:25 (August 30 email from Kelly Keeling to Mr. Cui about facts underlying potential tax appeal). There could not have been an agreement by Mr. Burke to reach out about the pole sign in exchange for the tax appeal work, when he, his law firm, and his law firm staff had no communications about the pole sign with Mr. Cui prior to Mr. Cui asking and Mr. Burke agreeing to undertake the tax appeal. And the evidence shows that Mr. Cui did not believe there was an agreement to help him in the pole sign matter even after Mr. Burke agreed to represent him in the tax appeal, as he emailed Mr. Burke again about the pole sign matter on August 26 and left Mr. Burke a voicemail about it on August 28. Tr. 2027:3-25; 2029:1-7.

Nor is there any evidence that supports a theory that Mr. Burke only had his assistant contact the city employees about the pole sign after September 5 when the contingency agreement to represent Mr. Cui came to fruition. Tr. 2148:4-9. The evidence shows that Megan Synowieki, Mr. Burke's assistant, reached out to Mr. Cui informing him to contact Ms. Frydland on August 31. Tr. 2041:6-2042:2 (showing Mr. Cui had responded to the email by August 31).

And that Mr. Burke asked Ms. Synoweiki to contact Ms. Frydland on August 30. Tr. 2066:7-15. At this time, Mr. Cui had already decided to have Mr. Burke's firm instead of Mr. Reveliotis handle the tax appeal and had emailed Mr. Burke's firm to represent him in the tax appeal. And any reach out by Mr. Burke's staff about the pole sign matter had already occurred before Kelly Keeling confirmed that Burke & Klafter believed there was a basis for the appeal and there was a formal representation agreement. Tr. 2034:23-2036:3. Nor would there have been any need for Mr. Cui to retain Mr. Moore in September 2017 to handle the pole sign matter if he bribed Mr. Burke on August 24 or September 5 to assist with the pole sign issue.[16] Tr. 2154:12-25.

At bottom, even viewing the evidence in the light most favorable to the government, the evidence establishes Mr. Burke's firm was retained on standard market terms and did bona fide work for Mr. Cui—it was bona fide compensation "paid" in the ordinary course of business (and that in fact resulted in no fees being paid per the terms of the agreement). The evidence also precludes a jury finding beyond a reasonable doubt that there was a bribe or gratuity that occurred on August 24 through Mr. Cui's retention of Mr. Burke's firm or on September 5 when the formal contingency agreement was entered into. There is no evidence that supports a quid pro quo agreement between Mr. Burke and Mr. Cui wherein Mr. Burke agreed to assist Mr. Cui with the TIF funds or pole permit issue in exchange for Mr. Cui retaining Mr. Burke's firm to handle the property tax appeal. Nor is there any evidence that Mr. Cui knew he was doing something forbidden by openly hiring Mr. Burke's firm, which Mr. Burke was legally allowed to operate and which routinely engaged in tax appeals.

---

[16] There is no evidence to support a gratuity theory for a Section 666 conviction either. Even though the contingency agreement was signed September 5, after Mr. Cui had been told to contact Ms. Frydland, Mr. Burke had already engaged Mr. Burke's firm to represent him in the tax appeal on August 24. There is no evidence the terms of the engagement altered or anything additional was given to Mr. Burke or his law firm after Mr. Cui was put in touch with Ms. Frydland. Nor was there evidence Mr. Cui's retention of Mr. Burke's firm was contingent on assistance with the permit issue; he already told his other counsel on August 24 that he would have Mr. Burke's firm handle the appeal before he knew that Mr. Burke would have his staff reach out about the permit issue.

This is the rare case that can overcome the barriers to the grant of a Rule 29 motion, where this Court must enforce the outer limits on reasonable inferences and find that the evidence is of insufficient caliber or quantity to allow a rational finder of fact to find the government met its evidentiary burden on each element of the offense beyond a reasonable doubt.

**II.    The Government failed to submit sufficient evidence to support Counts Thirteen, Fourteen, and Fifteen (violations of 18 U.S.C. § 1952(a)(3)) of the Superseding Indictment.**

**First and foremost**, the government failed to introduce evidence of the required interstate nexus for these counts. *See* 18 U.S.C. § 1952(a) (requiring interstate or foreign nexus). Mr. Cui did not stipulate to the interstate nexus element and the government failed to introduce any evidence of the essential element of an interstate nexus at trial. *See Perrin v. United States*, 444 U.S. 37, 41-42 (1979) (proving interstate nexus is necessary to invoke federal jurisdiction under Travel Act). The failure to present this evidence alone necessitates acquittal on these counts.

**Second**, a conviction under 18 U.S.C. § 1952 requires a "specific intent to promote or facilitate the violation of state law," which the government cannot prove an "specific intent" where the evidence shows that there was a perfectly lawful offer to pay Klafter & Burke market-rate compensation for handling a tax appeal. Further, here the alleged violation of state law was bribery, which for the reasons discussed above no rational jury could find there was any bribe given the evidence. But the government's bribery evidence is even more flawed when it comes to the alleged Travel Act violations alleged in Counts Thirteen, Fourteen, and Fifteen because the government must tie the specific emails alleged in those counts to the alleged bribe. The government has failed to introduce sufficient evidence to do so here.

Section 1952(a)(3) provides an offense for "[w]hoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, **with intent** to otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity" and who "thereafter performs or attempts to perform an act [described as unlawful activity in the statute.]"  18 U.S.C. § 1952(a)(3)(A) (emphasis added).  "As used in [Section 1952] 'unlawful activity' means . . . extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States[.]"  18 U.S.C. § 1952(b)(2).

To succeed on these counts it is not enough for the government to generally prove that a bribe occurred at some point in this case (which it has not, *see supra* Part I.A), but it must prove that the specific email identified in each count of the Superseding Indictment was used with the "intent to otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of [bribery in violation of the laws of Illinois]" and that an act was thereafter performed.  18 U.S.C. 1952(a)(3) and (b).[17]  The government has not introduced evidence to meet this burden.[18]

The evidence cannot prove a violation (or attempted violation) of 720 ILCS 5/33-1 or 720 ILCS 5/33-3(a)(4) because Mr. Cui did not promise or tender anything that Mr. Burke was not authorized by law to accept.  Nor does the evidence show a violation of 720 ILCS 5/29A-1 and

---

[17] The government specifically alleges violations of 720 ILCS 5/33-1 (Bribery), 720 ILCS 5/33-3(a)(4) (Official Misconduct),720 ILCS 5/29A-1 (Commercial Bribery), and 720 ILCS 5/29A-2 (Commercial Bribe Receiving).  Mr. Cui incorporates and preserves his arguments from the motion to dismiss regarding the proper interpretation of these statutes and the Chicago ethics ordinances, and why the indictment should have been dismissed as a matter of law. *See* Dkt. Nos. 88, 89, 153.

[18] A conviction based on a gratuity theory would not be a violation of all of these statutes.  *See* 720 ILCS 5/33-1 (requires "intent to influence" and does not contain word "reward" or other gratuity indicative language); 720 ILCS 5/29A-1 ("intent to influence" but no "reward" language); 720 ILCS 5/29A-2("influence" but no "reward" language).  720 ILCS 5/33-3(a)(4) does prohibit public officials from "soliciting or knowingly accepting for the performance of any act a fee or reward not authorized by law," but there is no evidence that Mr. Burke solicited Mr. Cui to retain his firm or that he knowingly accepted the representation in exchange for an unlaw quid pro quo or as a reward for helping with the pole sign.

720 ILCS 5/29A-2 because the evidence does not show that there was any bribe, much less a commercial bribe. And, there is no evidence of a violation of the Chicago Ethics Ordinance as it did not prohibit receipt of these attorneys' fees by Mr. Burke for bona fide work (and, to the contrary, expressly permitted it).

Notably, the Travel Act counts all charge specific emails on specific dates. The email at issue in Count Thirteen is an email sent at 12:03 p.m. on August 24, 2017 by Mr. Cui to Mr. Reveliotis. The email at issue in Count Fourteen is an email sent at 12:17 p.m. on August 24, 2017 by Mr. Cui to Mr. Burke stating he wished to retain Klafter & Burke for the tax appeal. The email at issue in Count Fifteen is an email sent at 11:25 a.m. on August 30, 2017 by Mr. Cui to Kelly Keening (a lawyer at Klafter & Burke) answering Ms. Keening's questions about the facts underlying the tax appeal so the firm could evaluate whether there was a factual basis for appeal.

As discussed in the prior sections, there is no evidence to establish that a bribe (or act by Mr. Cui showing an intent to bribe) occurred on the dates of August 24 or August 30. That alone is reason enough to find no rational jury could convict based on the evidence. But there are also problems with each of these counts going to the government's failure to show specific intent. Count 13 involved an email to Mr. Reveliotis—if Mr. Cui intended to offer an improper bribe, he would not be emailing his current lawyer to inform him of the plan—and there is no evidence that Mr. Burke was aware of the contents of the email. As to the email in Count 14, this came almost immediately after Mr. Reveliotis responded to Mr. Cui, showing Mr. Cui's state of mind was that his lawyer signed off on the plan to retain Mr. Burke and there was no intent to offer an improper bribe. And all this email shows is that Mr. Cui told Mr. Burke he wished to retain his firm to handle a tax appeal, there was no request for assistance with the tax pole matter. And

Count 15 involved Mr. Cui answering questions about the factual basis for the appeal so that Klafter & Burke could perform an assessment of the case before moving forward—a bona fide act that any responsible law firm would undertake. No reasonable jury could find an intent to offer a bribe through providing facts necessary to evaluate the viability of a potential representation.

Even viewing the evidence in the light most favorable to the government, no rational jury would find the evidence sufficient to prove these counts beyond a reasonable doubt, and an acquittal should be grant on all three counts.

## III. The Government failed to submit sufficient evidence to support Count Seventeen (violations of 18 U.S.C. § 1001(a)(2)) of the Superseding Indictment.

Finally, the government failed to introduce evidence sufficient to support a conviction for any alleged false statement. The FBI agent who conducted Mr. Cui's interview failed to identify a false statement. *See* Tr. 3845:15-48:6, 3854:14-3855:2, 3859:11-22.

Section 18 U.S.C. § 1001(a)(2) creates criminal liability for "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully makes any materially false, fictitious, or fraudulent statement or representation." 18 U.S.C. § 1001(a)(2).

The evidence at trial shows that the FBI agent who testified about Mr. Cui's interview could not remember or otherwise identify a false statement by Mr. Cui and could not identify what Mr. Cui said that was materially false. Tr. 3883:21-3892:22, 3895:15-3944:1; *see also* Tr. 3861:12-19 ("If I can take a look at the transcript, ***I might be able to*** point out a couple statements that were not true." (emphasis added)); 3928:5-7 ("Q: Okay. So you agree with me that you don't know how Charles interpreted the phrase "business dealings," right? A: No, I do not."). Moreover, the government objected to introducing the indictment, which precluded the

17

introduction of testimony about three alleged false statements identified in Count 18. Tr. 3877:5-14. The government's witness admitted that everything Mr. Cui said in the interview was true. He also testified that Mr. Cui cooperated, Mr. Cui waived attorney client privilege and Mr. Cui openly admitted that he retained Mr. Burke's law firm. 3870:21-3871:4 (did not have to invite FBI into his office); 3904:5-14 (Mr. Cui was forthcoming and candid); 3913:6-12 (Mr. Cui accurately volunteered he knew Mr. Burke, met him through TIF process, and tried to hire him for a pole sign representation); 3914:20-25 (no obstructive behavior during interview); Tr. 3920:25-3922:11 (told FBI they could talk to TIF lawyer); Tr. 3927:25-3928 (even after telling FBI to talk to TIF lawyer still trying to be cooperative); Tr. 3928:8-3930:7 (disclosing he hired Mr. Burke for tax appeal in the past); Tr. 3936:7-10 (volunteered Mr. Chin's name). The government's own evidence shows that in the interview Mr. Cui established himself as truthful and cooperative. Even viewing this evidence in the light most favorable to the government, given the absence of evidence no rational jury could find this evidence sufficient.

No rational jury could find the government introduced any evidence of a materially false statement, much less sufficient evidence to find the count proved beyond a reasonable doubt in these circumstances. An acquittal should be granted.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant Mr. Cui's Rule 29 motion as to all counts against him in the Superseding Indictment.

Dated:  December 13, 2023                                    Respectfully submitted,


By: <u>*/s/ Tinos Diamantatos*</u>

Tinos Diamantatos
Megan R. Braden
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL  60606-1511
Telephone: +1.312.324.1000
Facsimile: +1.312.324.1001
tinos.diamantatos@morganlewis.com
megan.braden@morganlewis.com

*Counsel for Defendant Charles Cui*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed on December 13, 2023, using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Tinos Diamantatos*
Tinos Diamantatos